**LINDSAY STATE BANK v. CORNELIUS et al.**

No. 8917. Opinion Filed Oct. 14, 1919.

Rehearing Denied Nov. 25, 1919.

(Syllabus by the Court.)

**1. Appeal and Error — Evidence — Sufficiency.**

Where there is no evidence reasonably tending to support the verdict, this court will, when the sufficiency of the evidence is properly challenged, set the verdict aside.

**2. Banks and Banking—Action on Certificates of Deposit.**

Record examined, and held, there is no evidence reasonably tending to support the verdict and the same cannot be justified upon any hypothesis presented by the evidence.

Error from District Court, Garvin County; F. B. Swank, Judge.

Action by B. F. Cornelius against the Lindsay State Bank of Lindsay, Okla., and another. From judgment for plaintiff, the bank appeals. Reversed and remanded.

J. S. Garrison and C. L. McArthur, for plaintiff in error.

Carr & Henderson, for defendants in error.

JOHNSON, J. This is an appeal from the district court of Garvin county, F. B. Swank, judge.

B. F. Cornelius, on February 22nd, 1915,

commenced an action, as plaintiff, against the Lindsay State Bank and W. E. Mooney, as defendants below, and for convenience, the parties will be hereinafter referred to as "plaintiff" and "defendants," as they respectively appeared in the court below.

The plaintiff's petition, omitting the caption, was as follows:

"For cause of action against the defendant, plaintiff alleges that on the days and dates hereinafter enumerated and during the years 1913 and 1914, he made or caused to be made various deposits of certain sums of money in said defendant bank, for which he holds certificates of deposit issued to him by defendant as follows, to wit:

"Nov. 28, 1913, $28.00; Oct. 29, 1913, $10.00; Nov. 29, 1913, $19.72; Nov. 29, 1913, $26.00; Feb. 26, 1914, $60.00; Jan. 10, 1914, $113.00; Feb. 14, 1914, $453.00; Jan. 17, 1914, $2,480.20; Feb. 7, 1914, $10.50; April 29, 1914, $32.00; Dec. 31, 1914, $1,015.00; making total of $4,248.02.

"Copies of said certificates of deposit are hereto attached marked Exhibit A and prayed to be taken as a part of this petition.

"Plaintiff avers that at divers times during the said years 1913 and 1914 he checked out a portion of said $4,248.02, leaving a balance in said bank at this date, of $1,958.15, for which sum he here sues and prays.

"Plaintiff avers that on the 19th day of February, 1915, he made legal demand upon said defendant bank for the payment of said balance of $2,623.15, amount as amended, by and through his attorneys, T. N. Robinett and E. W. Fagan, and that his said attorneys presented on said date at the banking house of said defendant bank and to the cashier of said bank, A. C. Bickell, plaintiff's check for said amount of $1,958.15, and payment was refused by said cashier, who marked said check, 'Feby. 19-15 No Funds,' a copy of said check, with said cashier's endorsement thereon is hereto attached marked Exhibit B and made a part hereto.

"Plaintiff further avers that during the years of 1913 and 1914, the defendant W. E. Mooney was the duly qualified and acting cashier of said defendant bank and as such cashier received all the deposits of plaintiff above set out, and signed the same as such cashier, and thereby became responsible to and with said bank and is now jointly with said bank due and owing to this plaintiff the said sum of $2,623.02. Wherefore, plaintiff prays for summons to issue to said defendants in terms of the law, that they be cited to appear and answer this petition and on final hearing plaintiff have judgment against said bank and W. E. Mooney for the said sum of $1,958.15 and cost of suit and all other and further relief to which he may be entitled either in law or equity."

The trial court sustained the demurrer

of the defendant Mooney to the plaintiff's petition, and the defendant the Lindsay State Bank answered as follows:

"Comes now the defendant the Lindsay State Bank, appearing for itself alone in answer to the petition of the plaintiff filed herein, and denies each and every allegation therein contained except such as are hereafter specifically admitted.

"Said defendant admits that it is a corporation, duly organized and existing under and by virtue of the laws of the state of Oklahoma, for the purpose of doing a general banking business as by the banking laws of said state provided, and that plaintiff is a resident of Cleveland county, Oklahoma. That the place of business of said Lindsay State Bank is at Lindsay, Oklahoma, Garvin county, and that J. B. Fisher is president and A. C. Bickell is its cashier.

"Said defendant further admits that the sum of money alleged in plaintiff's petition has been heretofore deposited by said plaintiff in said defendant bank, and said defendant admits that on the 19th day of February, 1915, plaintiff made demand of this defendant for the payment of said sum of $1,958.15 by and through his attorneys, T. N. Robinett and E. W. Fagan, and that said demand was by said defendant refused.

"Further answering said defendant alleges and states that prior to the said 19th day of February, 1915, the total amount of money deposited in said bank by said plaintiff had been withdrawn by said plaintiff and at the time of said demand there was no money to the credit of said plaintiff in said defendant bank.

"That the checks by which said money was withdrawn have been returned by said bank to said plaintiff and are now in his possession and this defendant is unable to attach to this answer copies of said checks; and said defendant now demands that plaintiff produce for the inspection of said defendant the said checks and the said plaintiff have and produce said checks at the trial of this cause, or defendant will introduce secondary evidence as to said checks.

"That this defendant is in no wise indebted to said plaintiff and this defendant prays that the plaintiff recover nothing against it in this action and that this defendant have judgment against the said plaintiff for its cost here most wrongfully expended and for all other and further proper relief."

At the close of the evidence the plaintiff asked for and was granted leave to and did amend his prayer by interlineation and asked for judgment for $2,623.02. And upon the issues thus joined between the plaintiff and the defendant, the Lindsay State Bank, the cause proceeded to trial before the court and jury on the 26th day of September, 1916, which trial resulted in a verdict in favor of the plaintiff for the sum of $2,623.02, for which amount the court accordingly rendered judgment. The defendant bank filed its motion for new trial on September 27, 1916, alleging:

"1st. Irregularity in the proceedings of the court, jury and prevailing party and irregularity in the proceedings of the court by which the defendant was prevented from having a fair trial.

"2nd. Misconduct of the jury and prevailing party.

"3rd. Accident and surprise which ordinary prudence could not have guarded against.

"4th. Excessive damages appearing to have been given under the influence of passion and prejudice.

"5th. Error in the assessment of the amount of recovery.

"6th. That verdict is not sustained by sufficient evidence and is contrary to law.

"7th. Newly discovered evidence, material for the defense which he could not with reasonable diligence have discovered and produced at the trial.

"8th. Error of law occurring at the trial, and excepted to by the party making application.

"9th. Error of the court in overruling the demurrer to the evidence of plaintiff.

"10th. Error of the court in refusing the peremptory instructions requested by said defendant.

"11th. Error of the court in overruling motion of said defendant for judgment on the special findings, notwithstanding the verdict."

—which being overruled by the court on October 26, 1916, to reverse such judgment and verdict, this proceeding in error was commenced by the defendant bank filing its petition in error in this court on the 16th day of February, 1917, with case-made attached, in which petition it assigns error as follows:

"Its first assignment was that the court erred in overruling its motion for a new trial.

"Its third, fourth, and fifth assignments of error cover the court's refusal to give defendant's requested instructions.

"Its sixth, seventh, eighth, ninth, and tenth assignments of error cover the court's instructions to the jury Nos. 4, 5, 6, 7, and 8.

"Assignment No. 11 covers the refusing to admit competent evdence, 12th in admitting incompetent evidence, and 13th, that the court erred in refusing to allow the plaintiff in error to file its amended answer after the verdict of the jury and before judgment was rendered."

We have carefully examined the entire record in the case, read and considered the briefs of counsel for the parties, and the conclusion reached is that the judgment of the trial court is erroneous and must be reversed, and it will not be necessary to consider the plaintiff's assignments of error except the first.

The plaintiff charged in his petition that he had deposited in the defendant bank on various dates and in various amounts, beginning November 28, 1913, up to and including December 31, 1914, a total of $4,248.02; that he held a deposit slip for each item deposited, making copies of such deposit slips exhibits to his petition, and alleging that at divers times during such period he checked out a portion of said sum, leaving a balance in said bank at the date of filing his petition, of $1,958.15; that he had theretofore demanded of said defendant said sum or balance by presenting his check therefor, the payment of which was by the defendant refused. The plaintiff testified in his own behalf upon the trial of the cause, his testimony fully sustaining the allegations of his petition.

The defendant's answer admitted that the plaintiff deposited the amount alleged in his petition and the demand of the plaintiff upon it for the amount sued for, and alleged such demand was refused for the reason that the plaintiff had checked out the amount that he had deposited in the bank and that no balance remained in the bank, and therefore, the bank refused such demand.

The plaintiff identified checks that he had given against his account during the period referred to, and testified to having been paid on cashier's checks, all amounting in the aggregate to $2,247.32, but stated that he could not say positively whether there were any more deposit slips or checks signed by him. He further testified that he never, at any time, authorized anyone to sign his name to checks on his account in the defendant bank.

The undisputed evidence showed that the defendant W. E. Mooney was the cashier of the defendant bank during the years 1913 and 1914, and until January, 1915, and that one Patterson, nephew of Mooney, was the bookkeeper in said bank. Also, that on January 5, 1915, the plaintiff and defendant W. E. Mooney met in Pauls Valley, and that they had a conversation about the condition of the plaintiff's bank account in the defendant bank, which resulted in their going to the law offices of Blanton & Andrews in Pauls Valley, who were the attorneys for plaintiff,

for the purpose of this arrangement, and that one of said attorneys drew an agreement between the plaintiff and Mooney, which was signed by them and is as follows:

"January 5th, 1915, Whereas, W. E. Mooney is indebted to B. F. Cornelius in the sum of $2,623.15, said W. E. Mooney hereby assigns to said B. F. Cornelius five shares of bank stock in the Lindsay State Bank of Lindsay, Oklahoma, and the following described notes as collateral to secure said indebtedness:

"One note signed by E. L. Victor for $800; one note signed by W. T. Miller for $650; one note signed by R. A. Barringer for $112.50; one note signed by Bee Smith for $165; one note signed by C. W. Duncan for $130; one note signed by W. W. Martin for $40; one note signed by Joe Myers for $200; one note signed by Joe Myers for $682.50.

"In testimony whereof we have hereunto set our hands this 5th day of January, 1915.
                              "W. E. Mooney,
                              "B. F. Cornelius."

And that on said date, the defendant W. E. Mooney executed his promissory note payable to the plaintiff on demand in said sum of $2,623.15, and thereafter on January 8th, the parties met in Lindsay, at which time the defendant Mooney delivered to the plaintiff the collateral described in said agreement, endorsed to the plaintiff, and his individual note for said amount and the plaintiff surrendered him the collateral agreement and note of January 5th, Mooney testifying that the same was given to the plaintiff as a complete settlement of the amount that had been deposited in the defendant bank by the plaintiff. This, however, was denied by the plaintiff in his testimony, he testifying that no final settlement was made between them, that he simply took what the defendant Mooney gave him as collateral, not understanding or intending that it should be in final settlement of his claim against the defendant bank and Mooney; the plaintiff testifying that he undertook to realize all he could on said collateral and that he did realize thereon the sum of $1,882.50, at an expense, however, to him in the way of attorney's fees of $270.00; that most all of the paper was discounted except the bank stock, which brought par, the amount of the discounts being around $600.00. So it was shown by the testimony of the plaintiff that he deposited in the defendant bank the sum of $4,248.02; that he drew out upon checks signed by him and upon cashier's checks, $2,247.32, and that he realized upon the collateral turned over to him by Mooney the sum of $1,882.50 at an expense to him for attorney's fees of $270.00, which, allowing him

the benefit of the amount of $270.00 as attorney's fee, would leave the amount that was due him at $388.20. This, it seems, would give him the benefit of his contention for the arrangement had with Mooney, whereby he accepted Mooney's note for the sum of $2,623.15, in which it was shown Mooney had added interest at either 10 per cent. or 12 per cent., the exact rate not being definitely fixed by the testimony, which note and collateral were accepted by the plaintiff, according to his testimony merely as security for his debt, but was never intended by him to be in payment of the debt. On the other hand, the defendant bank insists that the arrangement with Mooney was in full settlement of the balance due the plaintiff on account of his transaction with the bank, of which arrangement the bank had no knowledge at the time the transaction was had, but that such transaction showed both accord and satisfaction at the time of the transaction, and that the plaintiff by proceeding under the arrangement to realize upon the collateral amounted to a full ratification of the original agreement of settlement, and in support of this contention offered the defendant Mooney as witness in its behalf, who testified without objection, as follows:

"Q. I wish you would please state to the jury, in detail and as far as possible in regard to the money that Mr. Cornelius deposited in the Lindsay State Bank and was drawn out by you and why you drew it out? A. Well, it was in January, I think, 1914, early in the month, Mr. Cornelius one day was in the bank and he made the remark that some party that owed him down here had paid him off. He was sorry that they had got it or that he let them do it. I think the money possibly wasn't due or the note or some of them wasn't due, but the man had sold his place and wanted to sell out and therefore wanted to pay the notes off. So he had let him pay the notes off, and that he was sorry of it because that it was ten per cent. and he hadn't been able to find any place to put it. Something to that effect, so I told him that he had better send it up and let me use it; that I would be glad to use it individually or for the bank, of course I could give him only four per cent. for the bank but if he wanted to let use it individually I could give him twelve per cent. That I had a friend or two that had let me have money that way and I felt that individually I could afford to do it. So he said, 'Well, I believe that I will just write down,' and about this time he was having a little bit of trouble down there with him at least getting his letters principally through his banker down at Davis, Mr. Caldwell, I believe, so he wrote and then in a short time, why this banker sent him a check, he saw me again and said that he had some more and soon

he would send that up. Well, it laid there most of January or all of January, I think, as well as I remember, along in February he told me to just go ahead and check on his account, when had a loan I wanted to make. Q. When you had a loan that you wanted to make? A. Yes. When there was anything offered, and as I didn't find anything in January that I thought was suitable and I went on and in February, he asked me, 'Well,' he says, 'say, haven't you found any loan? I see you haven't made any,' or something to that effect. · At this time I had made one or two I remember and I told him, I says, 'About the last of February you will think I have made some.' I had a pretty good loan or two, so I used the most of it in the first of February, March or April, possibly those three months, made the charge slips against his account and the same was rendered in a statement to him at the end of each month, so that he might see the amount as the slips testify. What amounts and what notes that the names of the parties whom I had loaned them. A little bit later, why he wrote me, then not to let anything show in his account as he was having some little trouble."

It was further shown upon the trial that the plaintiff before he brought this action had brought an action against the defendant W. E. Mooney individually and that the allegations in his petition in that suit were as follows:

"Now comes the plaintiff, B. F. Cornelius, and says that he and the defendant are each residents of Garvin county, Okla. For his cause of action against the defendant, plaintiff says that on or about the 1st day of January, 1914, the defendant being cashier of the Lindsay State Bank of Lindsay, Garvin county, Oklahoma, the plaintiff had on deposit in said bank about $3,900.00 and the said defendant took from the credit of said plaintiff and from said bank the said sum of money and used the same; that the defendant thereby became indebted to and promised to pay this plaintiff the said sum of $3,900.00, and that thereafter there was $1,600.00 paid on said amount to this plaintiff by said defendant, and that there now remains due and owing to said plaintiff by said defendant, by reason of having taken said credit and moneys of said plaintiff, the said sum of $2,250.00 which sum the said defendant has promised and agreed to re-pay this plaintiff.

"Wherefore, plaintiff prays that he have judgment against the defendant for $2,250.00, interest and costs.

"Blanton & Andrews,
"Attorneys for Plaintiff."

Concerning which suit the plaintiff testified on re-cross examination and without objection, as follows:

"Q. Mr. Cornelius, just look at that please, that is the petition filed by Blanton & An-

drews for you against Mr. Mooney, after that same subject-matter, is it not? A. I suppose it is, I never read this, I was just relying on the attorneys for the business. Q. Mr. Cornelius, you spoke—Mr. McArthur kept asking you about a settlement that was had down here, do you mean by that that they turned these notes over as collateral security? A. That was the way I understood it. That was all that was done. Q. Did you ask Blanton & Andrews to file suit against Mooney or against the bank or just let them use their judgment? Q. Didn't you authorize them or suggest to them what kind of a suit they bring? A. No, sir. Q. Did you direct them as to who to make defendants? I say did you direct Blanton & Andrews against Mooney alone? A. No, sir."

The plaintiff's cause of action against the defendant bank was one to recover a debt. He alleged in his petition that he had deposited in the defendant bank sums at different times, making in the aggregate, $4,248.02. The defendant in its answer admitted that the allegation was true. The plaintiff stated in his petition that he had drawn checks against said sum which had been paid by the bank, leaving a balance due him therein of $1,958.15. The bank in its answer denied that such sum remained in the bank of such deposit, but alleged that all of such deposit had been paid upon checks of the plaintiff. The plaintiff alleged that he had made demand upon the defendant bank for the payment of said balance, the payment of which the bank had refused. The bank admitted the demand and refusal, stating as a reason for such refusal that the plaintiff had no balance in the bank at the time of such demand. Upon these issues the cause proceeded to trial. The plaintiff testified in his own behalf and introduced deposit slips issued to him by the defendant bank, clearly showing that he had deposited the sum in said bank alleged in his petition. The plaintiff identified checks drawn and signed by him against his account which were marked as Exhibits from B1 to B61 inclusive, aggregating the amount of $697.82, which were paid by the bank. He also testified that the bank had issued and delivered to him one cashier's check for $1,500.00 and sent to him at Ada, Oklahoma, and one for $50.00 sent to him at Sulphur, Oklahoma, both of which had been paid by the bank. He further testified that certain collateral had been delivered to him by W. E. Mooney, the former cashier of the bank, in the form of bank stock and promissory notes secured by mortgages upon which the plaintiff had realized in cash the sum of $1,882.50, which, together with the amount received upon

checks, aggregated the amount of $4,129.83, which would leave a balance in his favor on account of said sums deposited, of $118.20. He testified, however, that in collecting said collateral he had paid out the sum of $270.00 as attorneys' fees.

The foregoing was all the testimony offered by the plaintiff in support of his cause of action, and it was in no way contradicted by other evidence.

At the close of the evidence the plaintiff asked and was granted leave by the court to amend his prayer so that when amended he prayed for judgment for $2,623.02, for which sum the jury returned a verdict in his favor. Where there is no evidence reasonably tending to support the verdict, this court will, when the sufficiency of the evidence is properly challenged, set the verdict aside.

State v. Lonewolf, 63 Oklahoma, 163 Pac. 532; Earley et al. v. Johnson, 48 Okla. 498, 150 Pac. 482; Pahlke v. C., R. I. & P. R. Co., 62 Oklahoma, 161 Pac. 545.

There being no evidence in the record to support the verdict returned by the jury, the trial court erred in not sustaining plaintiff in error's motion for new trial, and the cause is therefore reversed and remanded, with directions to the court below to proceed with the cause in accordance with the views herein expressed.

OWEN, C. J., and McNEILL, HIGGINS, and RAINEY, JJ., concur.