GRAND DISTRIBUTING CO. et al. v. ADAMS.

No. 34399.   March 18, 1952.

Rehearing Denied May 13, 1952.

*244 P. 2d 571.*

Cornish & Baumert, McAlester, for plaintiffs in error.

Brown, Brown & Brown, McAlester, for defendant in error.

O'NEAL, J.   M. P. Adams, in the year 1946, was engaged in the retail beer business at Eufaula, Oklahoma. He had been well acquainted with J. N. Lewallen and Paul Harper for approximately 25 years. In the month of July, 1946, the plaintiff and the defendants entered into a verbal contract wherein the defendants agreed to supply plaintiff with 375 cases of Commander Beer for a period of three years at agreed price therefor. Plaintiff pleaded in support of the allegations of his petition that as a part and parcel of said oral agreement defendants obligated themselves to purchase in plaintiff's name 25 shares of the capital stock of the Capitol Brewing Company of Milwaukee, Wisconsin.

Pursuant to said agreement, the plaintiff executed and delivered to the defendants his check for the sum of $2,500, the agreed price of the stock to be purchased in his name. That as evidence of the transaction the defendants executed and delivered to plaintiff their receipt, which recites:

"Received of M. P. Adams $2,500 to be used to purchase stock in the Commander Brewery for which he will receive contract when deal is closed. If deal is not made then M. P. Adams will be refunded his $2,500.00".

Shortly after this transaction, the defendants entered into a contract with the Capitol Brewing Company of Milwaukee, Wisconsin, to ship defendants one car of Commander Beer monthly, and plaintiff was furnished 375 cases of the beer monthly from July, 1946, to January, 1947. The evidence of the plaintiff is to the effect that in the month of July, 1946, he made a demand upon Lewallen and Harper for the delivery of the 25 shares of stock of the Capitol Brewing Company and that he was advised by the defendants that the stock was then in the First National Bank of McAlester and would be delivered to him in due course of time. Plaintiff, on several occasions thereafter, made a demand for the delivery of the stock or the return of his $2,500.

In the latter part of October or November, Adams contacted the defendants at the office of The Grand Distributing Company in McAlester and stated to them that he had heard that they had either returned or canceled the brewery company stock, and, if that report was true, he wanted his money back; and, at that time, the defendants requested Adams to sign a contract

releasing them from the stock transaction.

This Adams refused to do, and thereupon the defendant stated: "Well, we will try to work out some kind of deal with you." That about a month later defendants came to plaintiff's place of business in Eufaula and requested that Adams assign his interest in the brewing company stock to the Pittsburg Investment Company. Adams replied as follows:

"Well, they just wanted me to assign my interest in my stock — it seemed — to the Pittsburg Investment Company, but they said if I would go ahead and take care of this beer for a short period of time that they would try to settle with me but they wanted me to sign this and they said if I would go ahead and take this beer they would work out some plan where they could pay me or they would furnish me beer of a better quality than the Commander beer, or give me so much off of every case until they paid me my money back."

That the defendants in the month of October, 1946, for the first time, advised him that they could not deliver to him the Capitol Brewing Company stock, as the stock had been forfeited because of defendants' inability to comply with the terms of their contract with the brewing company.

The defendants filed their answer and submitted testimony which substantially discloses that in the month of July, 1946, that they entered into an agreement with the plaintiff and five other retailers of beer in Pittsburg county that, if each of the retailers would agree to purchase from the defendants 375 cases of Commander Beer monthly, and would also agree to purchase 25 shares of the capital stock of the Capitol Brewing Company of Milwaukee, Wisconsin, that the defendants would enter into a contract with the brewing company to supply each retailer 375 cases of Commander Beer for a period of 36 months.

The defendants contended that the primary purpose of their agreement with plaintiff and the retail beer operators referred to was to procure a continuing supply of beer and the purchase of the brewing company stock was only incidental to the main agreement and that there was no specific agreement that the stock be issued in the name of the plaintiff or in the names of the other retail beer dealers. That defendants thereupon entered into a contract with the Capitol Brewing Company, whereunder defendants purchased $40,000 par value of the common stock of the brewing company and executed their note to the brewing company for the sum of $10,000, and thereupon the stock for said amount was issued, but was deposited by the defendants with the brewing company to guarantee the performance of defendants' agreement to purchase one car of beer monthly for a period of 36 months and, also, for the payment of defendants' note in the sum of $10,000.

None of this stock was issued in the name of the plaintiff or in the name of the other retail beer dealers entering into the agreement with the defendants. That within a few months after the transaction referred to, the retail beer dealers refused to accept their monthly shipments of beer, the reason therefor being that the Commander Beer was an off-brand beer and not of equal quality with nationally advertised beers which were then again returning to the market; that the defendants, being desirous of furnishing some evidence to the plaintiff and the other retail beer dealers who had entered into the joint venture, formed a corporation designated as the Pittsburg Investment Company and that defendants issued to each of the retailers, including plaintiff, 25 shares of the capital stock of the investment company, which defendants contended were to be held by them as evidence of defendants' obligation to deliver the brewing company stock if and when the contract for the purchase of the beer for the period of 36 months was fully complied with.

The transaction involving the Pittsburg Investment Company stock is fully

disclosed by the court's comments, as follows: "As I understand this money was paid in by Mr. Adams to Mr. Harper and Mr. Lewallen. They took that money and went to Chicago and purchased stock in the Capitol Brewing Corporation, and deposited it with the Milwaukee Holding Corporation as collateral. Later on, this Pittsburg Investment Company was formed and, without a dime being paid in by Mr. Adams, there was issued to him in his name $2,500 worth of stock. Do you all stipulate as to those facts?" By respective counsel, "Yes, sir."

The verdict upon which the judgment was based was in favor of the plaintiff for the sum of $2,500, the purchase price of the Capitol Brewing Company stock, with interest thereon from the date of the transaction. For reversal of the judgment, the defendants argue that there is no competent evidence to sustain the verdict of the jury, citing in support of that contention Hamm v. Caldwell, 105 Okla. 81, 231 P. 872; Hart Grocery Co. v. Hunt, 175 Okla. 32, 52 P. 2d 66; Lindsay State Bank v. Cornelius, 76 Okla. 273, 185 P. 97; Morris v. Purcell Bank & Trust Co., 85 Okla. 45, 204 P. 436. These cases hold that where the question of the sufficiency of the evidence to sustain the verdict was properly preserved in the trial court and the same is assigned as error on appeal, it is the duty of the court to review the record and, if there is no evidence reasonably tending to support the verdict, to reverse the judgment of the trial court with such directions as are proper under the record.

As these cases command, we have reviewed the entire record and hold that plaintiff's evidence substantially supports the allegations of his petition and that the issues were properly submitted in the court's instructions to the jury. We held in Swindler v. Selby, 130 Okla. 294, 267 P. 471:

"Where there is any competent evidence reasonably tending to sustain a verdict, though the evidence be conflicting, and the cause is submitted to the jury upon instructions fairly stating the applicable law, the Supreme Court will not review the evidence for the purpose of determining the weight thereof, and substitute this court's judgment for the judgment rendered on the verdict, and the verdict will not be disturbed on appeal."

And in Lutner et al. v. Shoffner, 181 Okla. 271, 73 P. 2d 1140, we held:

"It is a well-settled rule in this state that evidence is sufficient to sustain a judgment if there is any evidence whatsoever reasonably tending to prove either directly or immediately, or by permissive inference, the essential facts."

After the rendition of judgment, defendants moved for judgment notwithstanding the verdict. In Martin v. National Bank of Claremore, 182 Okla. 217, 77 P. 2d 40, and in Garrett v. Kennedy, 193 Okla. 605, 145 P. 2d 407, we said a motion for a judgment non obstante veredicto does not present for consideration errors in submission of evidence or the sufficiency of the evidence to sustain the verdict. We, therefore, hold that the motion for judgment notwithstanding the verdict was properly overruled.

Defendants further allege error in the court's refusal to give defendants' requested instruction on the law of estoppel. We are of the view that there was no evidence requiring the submission of an instruction on the law of estoppel. Defendants' contention that Adams accepted the Pittsburg Investment Company stock in lieu of the Capitol Brewing Company stock is not sustained by the record. Moreover, the jury's general verdict in favor of the plaintiff forecloses that contention. If in any view of the case defendants were entitled to the instruction, we find that the court amply covered the issue in its instruction No. 4 as follows:

"Further, you are instructed that the defendants have plead and introduced proof, which has been denied by plaintiff, that there was a new agreement to look to the Pittsburg Investment Corporation for stock rather than the

Capitol Brewing Corporation or the Milwaukee Holding Corporation. If you find and believe from a preponderance of the evidence that this new agreement was entered into by and between plaintiff and defendants, then your verdict should be for the defendants upon plaintiff's first cause of action."

Furthermore, defendants cannot urge error in the court's refusal to give defendants' requested instruction No. 3 on the theory of estoppel for the reason, that, in their motion for a new trial and in their petition in error, defendants below allege error in refusing to give defendants' requested instructions 1 to 8, inclusive. Casual examination of the group instructions will disclose that several of them are not applicable to the issues presented in the present action. We held in Cities Service Oil Co. v. Boggs, 170 Okla. 335, 40 P. 2d 638:

"Where several instructions are requested and refused, it is not sufficient to present the refusal of all the requested instructions in a single assignment of error, for the purpose of having all such requested instructions reviewed. If any one of such requested instructions is wrong, no error is presented."

To the same holding is Railway Express Agency v. Stephens, 183 Okla. 615, 83 P. 2d 858; North, Ex'r, v. Evans, 199 Okla. 284, 185 P. 2d 901.

Defendants' last ground for reversal is:

"Plaintiff failed to allege and prove the assessment for taxation of the note sued on, and that the intangible taxes had been paid thereon prior to the institution of this action."

We are unable to agree with defendants that the present action is a suit on a note. On the contrary, it is a suit for the return of money advanced to defendants for the purchase of specific shares of stock in the Capitol Brewing Company of Milwaukee, Wisconsin, and which stock was to be issued in the name of the plaintiff and delivered to him, or his money re-

funded. The Intangible Tax Law has no application to the transaction here involved.

The judgment of the trial court is affirmed.

HALLEY, V. C. J., and WELCH, CORN, DAVISON, JOHNSON, and BINGAMAN, JJ., concur.