OKLAHOMA RY. CO. v. BENSON.

No. 34344. March 31, 1953.

Rehearing Denied May 12, 1953.

Application for Leave to File Second Petition for Rehearing Denied June 17, 1953.

*257 P. 2d 1084.*

Richardson, Shartel & Cochran, F. M. Dudley, and Wayne W. Bayless, Oklahoma City, for plaintiff in error.

Monnet, Haynes & Bullis and Mart Brown, Oklahoma City, for defendant in error.

O'NEAL, J. Plaintiff's petition alleges that on the 19th day of May, 1948, at 7:10 a.m., plaintiff was walking across Main street in Oklahoma City, Oklahoma, in a northerly direction on the west side of Broadway, where said Main street and Broadway intersect, and within the painted markings designated in which pedestrians are to walk; that when plaintiff had advanced approximately 33 feet north of the south curb of Main street, he was struck by a bus owned by the defendant and operated by defendant's employee, William Henry Collins; that said bus had been traveling in a northerly direction along Broadway, and at the time it struck plaintiff was making a left turn onto Main street.

The acts of negligence are primarily based upon alleged violations of certain ordinances of the city of Oklahoma City, as follows:

(1) Title 10, §64 (5), of the ordinance pleaded need not be considered as it applies only to a vehicle making a right turn at intersecting streets. But it is alleged that defendant was negligent in making an improper left turn at the intersecting streets in that defendant cut the corner of the intersection in violation of Title 9, §55 (2), of

the traffic ordinances of Oklahoma City, Oklahoma. That said ordinance provides:

"The approach for a left turn shall be made in that portion of the right half of the roadway nearest the center line thereof, and after entering the roadway intersection the left turn shall be made so as to leave the roadway intersection to the right of the center line of the roadway being entered."

(2) That defendant failed to sound a horn or give any warning to the plaintiff in violation of Title 10, §64 (6), of the traffic ordinances of the city of Oklahoma City.

That subsection (6) provides that:

"Nothing within this section shall be construed to relieve every driver of any vehicle of the duty to exercise due care to avoid colliding with any pedestrian upon any street or roadway nor to give warning by sounding the horn when necessary, and to exercise proper precaution upon observing any child or any confused or incapacitated person upon the street or roadway."

(3) In addition plaintiff pleads defendant failed to keep a proper lookout for pedestrians crossing the street, and especially this plaintiff.

The answer of the defendant contains a general denial and also a plea of contributory negligence. Upon the trial of the case defendant demurred to plaintiff's evidence upon the ground that the allegations of the petition and the proof submitted did not establish primary negligence of the defendant. At the close of the case defendant's demurrer was renewed and it also interposed a motion for a directed verdict. The demurrer and motion were overruled. From the verdict and judgment rendered thereon in favor of plaintiff, the defendant appeals, alleging that the verdict and judgment are not supported by the evidence, and that the same are contrary to law. Specifically, defendant contends: (a) that there is a total failure of proof to establish the acts of negligence charged; and (b)

that the trial court erred in giving its instruction No. 14 as not applicable to the evidence, in that it assumes the existence of a material fact; and (c) that instruction No. 10 was erroneously given as the ordinance therein referred to was neither pleaded nor proven by either party; and (d) that it was error to give instruction No. 16, as it submitted to the jury a material issue not raised in the pleadings; and (e) that the verdict is excessive and returned under the influence of passion and prejudice.

Whether defendant's contention that the trial court erred in refusing to sustain defendant's demurrer and motion for a directed verdict depends upon whether, under the allegations of the petition and the proof, plaintiff established negligence of the defendant as charged. That question can only be resolved by epitomizing the evidence.

Officers Rankin and Connell, of the Oklahoma City police department, received a call by radio advising them of the accident at the intersection of Main and Broadway streets; they arrived shortly after the accident; they found J. R. Benson, the plaintiff, sitting on the curb on the north side of Main street near the Tradesmen's National Bank Building; they observed several spots of blood in the center of Main street, 33 feet north of the south curb of said street. At a point on the south side of the bus involved in the accident, and approximately 10 to 12 feet from the front end of the bus, and near where the cowling curves under the bus, they found a patch of human skin and hair and an indication of fresh blood. From measurements they placed the front end of the bus 18 inches from the north curb of Main street, and the rear of the bus extending in a southeasterly direction, some 6 to 10 feet. The bus was 36 feet long.

E. F. Collins, an attorney of Taloga, Oklahoma, was standing on the northwest corner of Main and Broadway streets and observed the plaintiff walking north on the green light to a point some 33 feet north of the south curb of Main street. He observed the bus as it proceeded north on Broadway, and as it turned west on Main street. After the bus entered Broadway, he could not see plaintiff, who was then south of the bus. He stated, however, that the front of the bus did not hit the plaintiff. When Officers Rankin and Connell came to the scene of the accident, the witness walked out to the intersection of Main street and pointed out to the officers where plaintiff had been lying prior to his removal to the north curb of Main street. At the point indicated he observed spots of blood on the pavement.

The witness, R. W. Thomas, county surveyor of Oklahoma county, made a survey of the Main and Broadway intersecting streets, and had prepared a plat indicating distances with reference to the intersections of the streets and the point of the accident. This plat was used throughout the trial by counsel for plaintiff and defendant; but in view of counsel uniformly referring to points as "here" and "there" in the examination of witnesses, we are frequently left in doubt as to the exact locations referred to.

Immediately prior to the accident a bus operated by J. S. Jackson, defendant's employee, had stopped on a red signal light on the southwest corner of Main and Broadway streets. Harry Copeland, a draftsman, residing in Dallas, Texas, was sitting on the north or left side of that bus immediately back of the bus driver. He observed plaintiff passing in front of the bus in which witness was then sitting, and walk in a northerly direction. The witness testified:

"A. Well, Mr. Benson had just passed in front of the bus I was on; and this other bus turned the corner and was coming at an angle and turning, of course, when it hit Mr. Benson; and knocked him down with his head pointed in a southwesterly direction and his legs right up about this high; and his

back down on the pavement; and I thought a wheel ran over it.

"Q. Now I will ask you this way. Did, or did it not cut the corner? A. It cut the corner."

The witness stated the side of the bus hit plaintiff, knocking him to the pavement, and that the driver of the bus upon which Copeland was sitting, "hollered," "hey" and "you will run over him."

Lee Andrew Glover was a passenger on the bus involved in the accident. He stated he sat on the left side toward the rear with a view to the south as the bus entered Main street. Referring to the Thomas plat the witness traced the movement of the bus from its stop on the red signal at the southeast corner of the intersecting streets as it proceeded north and then west, referring to points on the plat as "here" and "there". He observed plaintiff walking across Main street going north on Broadway, and as plaintiff crossed the intersection he stopped, and started to step back, but the bus hit him and the last time he saw plaintiff he was going over backwards. He said he felt a bump at the same moment and the bus ran over to the curb and stopped "catacorner" by the curb. He jumped out of the bus and ran around the back of it to see what had happened and found plaintiff lying a little south of the center of Main street.

J. R. Benson, the plaintiff, testified in his own behalf that he was a salesman for the Belmont Radio Corporation, with general headquarters at Dallas, Texas; that on the morning of the accident he had left his hotel and proceeded to the southwest corner of Main and Broadway streets; that when the green signal light went on he started across Main street, intending to go to Bishop's cafe. He stated he glanced both to the right and left to observe the traffic, especially the traffic coming down Broadway and turning west into Main street; that as he got near the tracks on Main street, he observed

the bus about a foot and a half away; and he stopped and immediately attemped to step backwards when he was hit and knocked to the pavement and the rear wheel of the bus ran over his leg.

In addition to the foregoing resume of the evidence submitted by plaintiff in chief, he introduced evidence of the nature and extent of the physical injuries inflicted; his loss of earnings, his medical and hospital expenses, and the pain and suffering he endured and his life expectancy.

Defendant, at this juncture of the proceedings, interposed a demurrer to the evidence contending that the proof did not establish any prima facie negligence, and that the proof submitted failed to establish that the asserted negligence was the proximate cause of the accident and the resulting injury to the plaintiff.

We have uniformly held that in determining the sufficiency of plaintiff's testimony to withstand a demurrer all reasonable inferences and deductions must be indulged in his favor and any testimony unfavorable to him should be excluded. Davis v. Curry, 192 Okla. 32, 133 P. 2d 186. Furthermore, the rule is well established in this state that where the evidence is such that reasonable men may fairly differ as to whether the facts constitute negligence, the question is one for the jury to decide. Carter, Adm'r, v. Pinkerton, 194 Okla. 34, 146 P. 2d 842.

The defendant was charged with a violation of Title 10, §64 (6), of the traffic ordinances of Oklahoma City, Oklahoma, in that defendant failed to exercise due care to avoid colliding with a pedestrian upon the street, and in failing to take proper precaution upon observing plaintiff, an incapacitated person, as he attempted to cross the street, and in failing to give a warning by sounding the horn of the bus.

As we have seen, the evidence tends to establish the following facts: (a) no

horn was sounded; (b) the witnesses, E. F. Collins, Harry O. Copeland and Lee Andrew Glover, observed plaintiff walking north across the street with the use of a cane and that he had approximately reached the center of Main street when the accident occurred; (c) that the witnesses, Collins and Glover, testified that the defendant's bus "cut the corner" as it entered into the intersection of the streets, contrary to traffic ordinance Title 9, §55 (2).

Defendant severely criticizes Glover's evidence, claiming he was thoroughly discredited in view of previous statements asserted to be inconsistent with his present testimony. The weight of his testimony, and also his credibility, are not subject to our review. Such questions, of necessity, must be and were resolved by the jury in the rendition of the verdict. As we view the record the court properly overruled defendant's demurrer to plaintiff's evidence in chief.

We now summarize defendant's evidence. William Boggs, an employee of the street department of Oklahoma City, was standing on the northwest corner of the intersection of Main and Broadway. He observed plaintiff crossing Main street going north on Broadway; he stated that plaintiff walked in a semi-crouched position. He did not know whether plaintiff checked his forward movement as he approached the bus. He expressed an opinion that the bus "made a good long corner," but he was unable to state whether the bus went south or west of the center point of the intersecting streets. He left before Officers Rankin and Connell came to the scene of the accident. When he read an account of the accident in a newspaper, he thought that the accident was improperly detailed so he contacted an employee of the defendant company and furnished him with his version of the accident.

Nelson Milton, employed as an engineer by the city of Oklahoma City, was a passenger on the bus. He placed the bus 10 to 12 feet north of the center of Main street when the accident occurred. He observed plaintiff some 5 or 6 feet south of the bus walking north in a stooped position. He could not remember whether plaintiff stopped or looked up before the accident, or whether the bus turned clear around the intersection of the streets, but thought it had not straightened out when the rear south end of the bus came in contact with the plaintiff. He heard someone on the bus "holler," "you hit a man".

R. H. Spencer, a passenger, was sitting on the left side of the bus immediately prior to the accident. He stated that as the bus started to make its left turn, he observed plaintiff standing 4 or 5 feet from the south curb on Main street; that plaintiff started to walk north and came in contact with the bus just as it was making the turn. The bus did not sound its horn, neither did he observe that plaintiff was walking with the use of a cane.

W. H. Collins, the driver of the bus involved in the accident, testified that he stopped the bus on the red light signal on the southeast corner of Main and Broadway; and that when the green light went on he entered the intersection of Main and Broadway and turned west on Main. He observed plaintiff going north on the pedestrian walk with his face "kinda looking down". He was not sure whether plaintiff walked with the use of a cane but he noticed that plaintiff walked with a limp. He stated that the first time he looked to the south was when his bus was within 5 or 6 feet from the pedestrian walk, and at that time plaintiff was approximately 10 to 15 feet south of the bus, walking in a northerly direction. He stated that his supervisor was standing on the northwest corner of the intersecting streets and that the supervisor "hollered" at him and he immediately brought his bus to a stop. He stated that he did not sound the horn of the bus at any time as he made the turn

from Broadway to Main street, and that after he passed the pedestrian walk he was looking toward the north curb immediately prior to bringing the bus to a stop.

Charles Roach testified that he was approaching the corner of Main and Broadway, immediately prior to the accident. He observed the bus as it made the turn and as it approached the pedestrian walk. He observed plaintiff as he approached the bus some two or three steps to the south thereof, in which position his view of the plaintiff was then obscured and he did not see the contact of plaintiff with the bus.

J. S. Jackson, a bus driver, employed by the Oklahoma Railway Company, had stopped his bus on the southwest corner of Main and Broadway, waiting for the green signal light to go on. He observed the bus involved in the accident as it made its turn from Broadway, and as it approached the east line of the pedestrian walk at which time he observed plaintiff some 6 or 8 feet south of the left front corner of the bus, walking slowly, with a noticeable limp, and with the use of a cane. He stated that plaintiff kept going forward until he bolted into the side of the bus; that when the plaintiff fell his body was lying near the street car rails. He stated the accident occurred as the bus was making the turn, and that the rear of the bus was somewhat at a southeast angle—the front end of the bus in a northwesterly direction. The witness did not remember that he "hollered" at W. H. Collins, the driver of the bus involved in the accident (his passenger, Harry C. Copeland had testified he "hollered", "hey" and "you will run over him.") nor did the witness remember whether the driver of the bus involved in the accident sounded his horn (the driver, however, testified that he did not sound his horn).

Under our view of the entire evidence we hold that the trial court properly overruled defendant's motion for a directed verdict. The evidence with all permissible inferences sustains findings that plaintiff was apparently an incapacitated person, walking in a semi-crouched position, with the use of a cane. Plaintiff, in addition to other sections of city ordinances, pleaded the provisions of city ordinance, Title 10, §64 (6), which requires drivers of vehicles to exercise due care to avoid colliding with a pedestrian upon the street by giving warning by sounding the horn when necessary and to exercise proper precaution upon observing an incapacitated person upon the street.

The defendant's driver, by his own admission, did not sound his horn. Moreover, he stated he observed the plaintiff coming toward the bus "kinda looking down" walking with a limp, at a distance of some 10 feet south of the bus. Furthermore, he stated that he did not look south from which direction plaintiff was approaching until the front of the bus was within 5 or 6 feet of the pedestrian walk. The evidence also discloses that defendant's supervisor and also the driver of another of defendant's busses "hollered" warnings to the bus driver, as heretofore indicated. There is also evidence of the witnesses, Glover and E. F. Collins, that the bus involved in the accident cut the corner at the intersection of said streets.

The evidence is without dispute that the bus was 36 feet in length and that, as it entered Main street, the back or rear end of the bus tracked some feet to the south of its front wheels.

Evidence of negligence or nonnegligence cannot be established with mathematical certitude in any case. We think reasonable men might well differ on the question of negligence or the want of due care under the circumstances as disclosed by this record, and, therefore, the verdict thereon, as approved by the trial court, can only be vacated upon errors of law prejudicial to the substantial rights of the defendant. Citations of decisions in cases under fact situations dissimilar to the case at bar do not afford us much

light as we find that every case is unique and requires a creative decision. Defendant urges that errors in the trial court require a reversal of the case. It challenges instruction No. 14, as assuming the existence of a material fact. That instruction reads:

"You are instructed that motorists who are making turns at intersections have the duty to bear in mind that a pedestrian in crossing the street at an intersection must give more attention to traffic which is in his path or approaching him from the right or left than to that which may be approaching diagonally from the rear."

In view of the evidence that the bus proceeded north on Broadway, and then west on Main, coupled with the evidence that the plaintiff had reached the center of Main street, when coming in contact with the bus, sufficiently warranted the giving of this instruction. There was no controversy as to the position of the bus as it entered the intersecting streets, other than whether it swung around the exact intersection or cut its corners. Plaintiff's witnesses stated it made a short turn and the finding of the jury established that fact. In either event, it was not at the time of the accident in a direct east and west path of the pedestrian plaintiff.

When we consider the court's instruction No. 4, that the burden is upon the plaintiff to establish all the material allegations of the petition by a preponderance of the evidence, and instruction No. 6, that mere proof of the accident and injury does not establish negligence, and instruction No. 8, that both parties must exercise ordinary care for their and others' safety, and instruction No. 13, which requires plaintiff to take into consideration the fact of traffic at the intersecting streets and keep a sharp lookout for such traffic, we cannot assume that instruction No. 14, supra, was prejudicial to defendant's rights.

Defendant urges that instruction No. 14 conflicts with instruction No. 13, and,

therefore, tended to confuse the jury. We find no such conflict. Instruction No. 13 does no more than advise the jury that it was the plaintiff's duty in attempting to cross the intersecting streets to take into consideration that vehicles were constantly passing and turning, and, therefore, he should keep a sharp lookout for such vehicles to ascertain the movements they were making or about to make. The instruction thus placed the burden on plaintiff to exercise care for his own safety.

Defendant contends that the court's instruction No. 16 was erroneous, in that it gives undue emphasis to a specific fact or circumstance and ignores the importance of others. That instruction reads:

"You are instructed that, due to the length and size of the bus involved in the accident, in making turns at intersections the rear of the bus does not track the front end, but in this particular case the left side of said bus as it extended toward the rear came farther to the left or south than did the front end, and in this connection you are charged that the bus driver owed the duty to the plaintiff to take this fact into consideration in determining the method and manner in which he should operate said bus."

Defendant cites the following cases to support its contention of error: Dill v. Johnston, 121 Okla. 62, 247 P. 349; Oklahoma Gas & Electric Co. v. Priest, 178 Okla. 91, 62 P. 2d 55; Prest-O-Lite Co., Inc., v. Howery, 169 Okla. 408, 37 P. 2d 303. These cases hold that, under the facts there involved, it was error to instruct the jury upon a material issue which was not raised by the pleadings, but, as we have heretofore noted, plaintiff pleaded a violation of Title 9, §55 (2), of the traffic ordinances, which provides that the vehicle shall enter the roadway after making a left turn so that when leaving the roadway intersection the vehicle is to the right of the center line of the roadway being entered. It was not incumbent upon plaintiff to plead the evidentiary fact

that the rear end of the bus trailed to the left or in a southwesterly direction, 5 or 6 feet, as it made the left turn. The fact that it did so is not controverted. All that instruction No. 16 did was to advise the jury that the driver owed a duty to plaintiff to take that fact into consideration in determining the method and manner in which he should operate the bus under the circumstances.

Defendant also complains of instruction No. 10 on the ground that the ordinance referred to, being §4, Title 2, Ordinance 5791, of the ordinances of Oklahoma City, was not pleaded. That ordinance reads:

"Vehicles facing such signal shall proceed straight through or turn right or left, unless an official sign at such place prohibits such turn, but the right-of-way shall be yielded to any vehicle, railroad train, street car or pedestrian lawfully within the intersection when signal changes to green. Pedestrian facing such signal may proceed across the roadway unless a 'walk' signal indication is operating."

The ordinance was not pleaded or proven and the instruction was inadvertently given. Although erroneously given it does not warrant a reversal unless it appears to have prejudiced defendant's substantial rights. The rationale of the instruction is that if plaintiff started to cross Main street before the green light came on and therefore was not lawfully at the intersection, the bus in that situation had the right of way. If the jury had so found it would logically follow that plaintiff was himself negligent contributing to his injury. The instruction was not harmful and in fact it was beneficial to the defendant. In any event, we cannot say it confused or misled the jury. An erroneous instruction standing alone without more does not constitute reversible error. Pact Gas Co. v. Baker et ux., 203 Okla. 124, 218 P. 2d 912, and Bowring v. Denco Bus Lines, 196 Okla. 1, 162 P. 2d 525.

Lastly, defendant contends that plaintiff was awarded excessive damages appearing to have been given under the influence of passion or prejudice. The verdict returned was for the sum of $29,458. In the accident plaintiff suffered a fractured left shoulder and also a compound fracture of his right leg. The injury was inflicted on May 19, 1948, and at the date of trial, in February, 1949, his leg was still in a cast or brace running from the thigh to the knee. He had incurred medical and hospital bills in the sum of $1,354. He remained in the hospital from the date of injury, in May, until the month of September, following. He suffered severe pain.

In the year 1946, he had an income of $13,000 and in the year of 1947, an income of $18,000. He had been unable to return to his employment from the date of the accident to the date of the trial. There was evidence to the effect that his future earning capacity would be permanently reduced to the extent of at least one-half of his former earning capacity. He had a life expectancy of approximately 18 years, and had been continuously employed by the same company for a period of 16 years prior to the accident in question.

Under this record, we cannot agree with defendant's contention that the verdict is excessive.

Affirmed.