**SHELL PIPE LINE CORPORATION, Plaintiff in Error,**

v.

**Henry A. CURTIS, Defendant in Error.**

No. 36689.

Supreme Court of Oklahoma.

July 12, 1955.

As Amended on Denial of Rehearing Sept. 20, 1955.

682

A. R. Swank, A. R. Swank, Jr., Chilton Swank, Stillwater, for plaintiff in error.

James M. Springer, Jr., Stillwater, for defendant in error.

CORN, Justice.

Plaintiff brought this action seeking to recover damages for personal injuries allegedly sustained by reason of defendant's negligence. The case heretofore has been considered by this court, and a decision rendered reversing the trial court's order and judgment sustaining defendant's de-murrer to plaintiff's amended petition. See Curtis v. Shell Pipe Line Corp., Okl., 265 P.2d 488.

The amended petition, upon which the case was tried, alleged plaintiff's ownership of a 50 acre farm principally devoted to pasturing cattle; defendant owned an oil and gas pipe line traversing plaintiff's property (north and south) under a previously executed right of way agreement; about December 18, 1951, defendant opened a ditch approximately 4 feet wide and 3 feet deep exposing such pipe line, which was permitted to remain open until January 22, 1952, when plaintiff's action was filed. The morning of December 25, 1951, plaintiff discovered one of his cows had fallen into, and was unable to extricate herself from, this ditch. He enlisted aid of a son and son-in-law in order to remove the animal therefrom. Plaintiff was down in the ditch attempting to raise the animal, in a customary and proper manner; the cow was struggling during their efforts and plaintiff was thrown violently against the wall of the ditch and thereby received a ruptured intervertebral disc, such injury being of a permanent, serious and painful nature. Defendant was charged with negligence in that it knew, or should have known, plaintiff's stock had access to and might fall into the ditch; in leaving the ditch open and unprotected; that such acts of negligence were the proximate cause of this animal falling into the ditch and plaintiff being injured.

Defendant's amended answer made general and specific denial of the matters alleged in the petition, and further plead that if defendant, its agents or employees were negligent the plaintiff's negligence so combined with defendant's acts as to be proximate cause of injury, and amounted to contributory negligence on plaintiff's part.

Plaintiff replied by general denial and the issues thus formed were tried to a jury. After hearing all the evidence, and under appropriate instructions from the trial court, as to which no claim of error is made, the jury returned a verdict in plaintiff's favor for $15 000, upon which the judgment appealed from was rendered. The various

specifications of error urged as grounds for reversal of this judgment are presented under five propositions, all but one of. which attack the sufficiency of the evidence to support the jury's verdict.

The first contention urges the insufficiency of the evidence to support the verdict and judgment. Plaintiff's evidence disclosed his discovery of the cow in defendant's ditch, that he sought assistance in attempting to extricate her therefrom, and that he received the injury complained of in the manner alleged. There was evidence indicating defendant's knowledge that plaintiff's land was used as a pasture, and that this ditch remained unbarricaded from the time it was dug until this action was begun. The evidence in regard to these matters was corroborated by the testimony of plaintiff's son and son-in-law. There was medical testimony tending to establish the nature and extent of his injury, as well as subsequent loss of earning capacity, pain and suffering, and existence of permanent partial disability resulting from the injury.

The defendant's argument is that the physical facts surrounding this occurrence, as reflected by the evidence, are sufficient to disclose the utter impossibility of any accident having occurred in the manner testified to by plaintiff, and that analysis of the evidence clearly indicates nothing more than that plaintiff's entire case was and is a total fabrication. No purpose could be served by discussion of each of the numerous circumstances, which are pointed to as clearly demonstrating the fantastic nature of plaintiff's claim as opposed to the validity of defendant's argument.

The probability or improbability of the occurrence alleged, and the weight and credibility to be given to the testimony of plaintiff's witnesses, were matters singularly within the province of the jury. Poston v. Alexander, 191 Okl. 653, 132 P. 2d 343; Oklahoma Ry. Co. v. Benson, 208 Okl. 588, 257 P.2d 1084. Defendant's argument that the evidence showed the ditch to be too narrow and too shallow for the accident to have happened as testified to is based entirely upon defendant's interpretation of the evidence. And, this is true also as to the argument plaintiff could not have been injured in the manner testified to, because the narrowness of the ditch made it impossible to get down into the ditch next to the animal. There was evidence from which the jury could conclude the ditch was 2 feet wide or 4 feet wide, and that it was 2 feet deep, or 3½ to 4 feet deep. And, the fact plaintiff's testimony was corroborated by his relatives was simply a circumstance to be considered by the jury in gauging the weight and credibility of their testimony.

The conflict in the evidence relative to the width and depth of the ditch was such that reasonable men might differ as to the reasonable inferences and proper conclusions to be drawn therefrom. The matter properly was left for the jury to determine. There is competent evidence to support the findings of the jury, and such findings will not be disturbed on appeal. Grand Distributing Co. v. Adams, 206 Okl. 451, 244 P.2d 571.

The same rules are applicable to the argument that the evidence fails to sustain the finding plaintiff suffered a ruptured intervertebral disc in this accident. The testimony respecting the nature and extent of plaintiff's injury was in sharp conflict. Defendant's evidence was directed toward showing plaintiff suffered no injury, testified falsely, and in truth was gainfully employed during the period he claimed to have been unable to work. The jury evidently did not choose to accept such evidence to the exclusion of the evidence introduced by plaintiff. In view of the conflict in the evidence this court will neither review the evidence to ascertain the weight thereof nor disturb the verdict of a properly instructed jury based thereon. Oklahoma Ry. Co. v. Benson, 208 Okl. 588, 257 P.2d 1084; Sisler v. Smith, Okl., 267 P.2d 1081.

Defendant next contends the evidence showed this ditch was opened by an independent contractor who had exclusive control thereof; that there was no proof defendant had supervision of the pipeline at the time in question, and no legal proof

defendant was the owner and operator thereof, and defendant was not, and could not be, liable for any negligence of the independent contractor or its employees.

Defendant argues that, under the pleadings, plaintiff was bound to prove defendant's ownership of the pipeline, opening of the ditch and maintenance in that condition. It is urged that plaintiff failed to make proof of the pipeline agreement, and these related matters, whereas defendant's evidence positively established this work had been done by an independent contractor.

Plaintiff's testimony showed his ownership of the property for 11 years and that defendant's pipeline right of way crossed the premises, and that same had been opened up across his land prior to this occasion; land over which this easement had been acquired was known by defendant to be pasture land used by plaintiff, the servient owner, for grazing purposes. There was other testimony showing defendant had entered upon the property on prior occasions in order to open ditches, and on one occasion had done this to repair a leak in the line. No evidence was offered by defendant to controvert this testimony. We consider this sufficient to establish, by virtue of the relationship existing between these parties as owner of the dominant and servient estates, the existence of a legal duty upon the defendant not to use its easement to the detriment of the servient estate.

In Minnetonka Oil Co. v. Haviland, 55 Okl. 43, 155 P. 217, 219, a landowner sued his lessee for damages to his property incurred in drilling an oil well. The defendant sought to escape liability by showing the well was drilled by an independent contractor. In denying the validity of such argument the court said:

"We think that while the rule is well settled that one, who does work through the instrumentality of an independent contractor, is not liable for damages, caused by the negligent performance of such work by the independent contractor, to third persons, except where the work is inherently dangerous or unlawful, it is equally well settled that, where a person either by contract or by law owes an obligation to another, he cannot escape liability for negligence in the performance of such obligation by delegating the duty to an independent contractor. In the case at bar, by the terms of the oil and gas lease, as subsequently modified, the defendant had agreed with plaintiffs to drill an oil well upon their premises. By reason of this contract, it was the duty of the defendant to drill this well without doing any unnecessary damage to the property of the plaintiffs. The plaintiffs stand in an entirely different relation to the defendant as to their rights and its duty in the premises from a third person who was a stranger to the contract under which the work was done. As the work, the negligent performance of which occasioned damage to plaintiffs, arose out of the contract between plaintiffs and defendant, the defendant is liable for the negligent performance of such work without regard to the means by which it undertook to perform the contract."

This rule has been followed in numerous of our later decisions.

It is clear, under the grant of the easement herein, that defendant owed a duty imposed by law to so use the property that injury or damage would not result to plaintiff as a result of customary use, maintenance or repair of the dominant estate. This duty arose out of the contract providing for the right of way. However, the law and not the contract imposed this duty upon defendant. The defendant cannot evade liability by showing the pipeline, for which the easement was granted, was uncovered by an independent contractor and left in that condition for an unreasonable period of time without precautions being taken to prevent injuries to others.

Defendant next contends the trial court committed reversible error in refusing to grant defendant's motion for new trial upon the ground of newly discovered evidence. This motion, presented in compliance with the statutory requirements, 12 O.S.1951,

§ 651, subd. 7, was based upon the affidavits of two persons who were out of the state at the time this action was tried, and who did not learn of plaintiff's damage suit until they returned in August, 1954. Affidavits stated that in 1950 defendant had been charged, tried and convicted of assault and battery as the result of an altercation between defendant and affiants; that at such trial defendant appeared in court complaining of a serious back injury and inability to walk, and that such injuries resulted from this altercation; whereas they knew plaintiff to be a malingerer, who previously had told them of having collected damages for a back injury. The motion for new trial set forth that plaintiff pursued this same course of conduct at the trial of this case. Defendant's argument is that, had the jury been given the benefit of affiants' testimony, this undoubtedly would have changed the result of the trial.

In Bates v. Winkle, 208 Okl. 199, 254 P.2d 361, we considered the matter of granting new trial upon the ground of newly discovered evidence. Therein we reviewed the matters which must be disclosed by the alleged newly discovered evidence before a motion presented upon such ground can be sustained. See also Belt v. Morris, 168 Okl. 528, 34 P.2d 581.

■ The matters stated in the affidavits upon which defendant's motion was based, to the effect that in the past plaintiff had pretended injury and pain, went only toward impeaching his testimony relative to the nature and extent of his injuries, and toward discrediting his conduct and demeanor at the trial. Whether defendant was shamming or pretending an injury was an issue at the trial. The matters presented by the affidavits supporting the motion for new trial could have been cumulative only, and offered for the purpose of contradicting or impeaching other evidence. In these respects the matters raised by defendant's motion for new trial fail to meet the requirements of the statute, supra. See Bates v. Winkle, supra, and authorities

therein cited. See also Missouri, K. & T. R. Co. v. Embrey, 168 Okl. 433, 33 P.2d 481; Hill v. Capitol State Bank, 178 Okl. 610, 63 P.2d 957.

■ The fourth contention is that having failed to establish actual existence of the injuries claimed plaintiff was not entitled to recover damages. The examining physician testified he could not be positive of the nature of plaintiff's injury until he made a particular (myelogram) test; however, in his opinion plaintiff had sustained injuries alleged; although he was not sure of this after having examined plaintiff in 1952, after a second examination he was convinced plaintiff had a ruptured disc. The jury was entitled to accept or reject such testimony in arriving at their verdict. There was competent evidence reasonably tending to sustain the verdict and a jury verdict based thereon will not be disturbed on appeal. Grand Distributing Co. v. Adams, supra.

■ The final contention is that the verdict herein is excessive. The argument in this connection is without substantial merit. The evidence disclosed the probable cost of necessary corrective surgery to be performed upon plaintiff at a cost of approximately $500. The extent of permanent disability was fixed at approximately 15 per cent. Plaintiff's testimony showed that prior to injury his income was as high as $3,000 per year, whereas following the injury his income from his farm and other employment did not exceed $1,700 per year. There was medical testimony that constant pain is typical of this kind of an injury. The amount of damages fixed by the jury was within the permissible limits reflected by the evidence.

Judgment affirmed.

JOHNSON, C. J., and HALLEY, BLACKBIRD and JACKSON, JJ., concur.

WILLIAMS, V. C. J., dissent.