TSG TULSA RETAIL, L.L.C. v. INDEP. SCHOOL DIST. #9 OF TULSA CTY.



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:TSG TULSA RETAIL, L.L.C. v. INDEP. SCHOOL DIST. #9 OF TULSA CTY.

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 TSG TULSA RETAIL, L.L.C. v. INDEP. SCHOOL DIST. #9 OF TULSA CTY.
2018 OK CIV APP 52
Case Number: 115915
Decided: 04/20/2018
Mandate Issued: 07/18/2018
DIVISION I
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION I
Cite as: 2018 OK CIV APP 52, __ P.3d __

 

TSG TULSA RETAIL, L.L.C., Plaintiff/Appellant,
v.
INDEPENDENT SCHOOL DISTRICT #9 OF TULSA COUNTY, OKLAHOMA, Defendant/Appellee.

APPEAL FROM THE DISTRICT COURT OF
TULSA COUNTY, OKLAHOMA

HONORABLE DANA KUEHN, JUDGE

AFFIRMED IN PART, REVERSED IN PART AND REMANDED

S. Douglas Dodd, Tom Ferguson, Jon Brightmire, Tulsa, Oklahoma, for Appellant,

Douglas Mann, Cheryl Dixon, Tulsa, Oklahoma, for Appellee.

Larry Joplin, Judge:

¶1 Appellant, TSG Tulsa Retail, L.L.C. (TSG), seeks review of the district court's grant of Appellee's, Independent School District #9 of Tulsa County, Oklahoma (the School District), motion for summary judgment, granted by order of the district court on March 6, 2017. TSG sought declaratory, injunctive and related equitable relief relating to the School District's use of a mutual access easement that facilitates traffic flow in and around Flynn Plaza in south Tulsa, Oklahoma. In granting the School's motion for summary judgment, the district court determined the School District's use of the mutual access easement to facilitate traffic from a neighboring property was reasonable and provided for in the deed of dedication. Further, the court determined the School was not burdening the servient estate (TSG's property) by sending school traffic over lot 5 to the mutual access easement. The court also found the road over lot 5, used to access the easement, was appropriate at the present time. The court concluded by finding the amended easement restriction did not preclude lot 5 from being used for "school use." TSG now appeals the district court's grant of the School's motion for summary judgment.

¶2 In December 2014, TSG purchased two lots in the Flynn Plaza subdivision, lots 2 and 3. The School District owns lot 5, which is adjacent to lots 2 and 3. The School District purchased lot 5 in 2007 and completed a roadway extension over the lot in 2012. Other than the roadway extension, the school has constructed no other improvements on lot 5. Tulsa Union High School sits to the north and east of lot 5. The lot 5 roadway extension takes traffic from the high school property to the mutual access easement and eventually to lots 2 and 3 and beyond.

¶3 On October 16, 2015, TSG filed a petition against Independent School District #9 of Tulsa County requesting declaratory, injunctive and related equitable relief with respect to the School's use of lot 5 and the mutual access easement. In its first claim under the petition, TSG asked the court to declare that the use of lot 5 is limited to "Use Unit 11" of the City of Tulsa Zoning Code, which permits low intensity uses, such as office buildings. TSG also requested a declaration that consents given by the 2006 owners of lots 1, 2 and 4, purporting to consent to the amendment to the deed of dedication of Flynn Plaza, are ineffective and not binding on TSG, because the consents and the amendment were never signed nor approved by the Tulsa Metropolitan Area Planning Commission. In addition, TSG asked the court to declare the consents and amendment ineffective as they were not filed prior to TSG's acquisition of lots 2 and 3.[1] TSG requested the School District be enjoined from using lot 5 for school uses until the planned unit development (PUD) and the deed of dedication are amended as required.

¶4 In the second claim of the petition, TSG requests the court to declare the School District is not permitted by the deed of dedication and the PUD to use lot 5 to provide access for the high school to and from 71st Street South. TSG also requests the School District be enjoined from using the easement to provide access to and from 71st Street South, or order the School District to refrain from overburdening the easement and exceeding the intended scope of the easement. TSG's third claim asks the court to declare that the existing site plan does not allow traffic circulation onto Flynn Plaza from lot 5 as the School District is currently doing and requests an injunction to prevent the School District from allowing traffic to circulate from the Union School campus to Flynn Plaza.

¶5 The School District filed a motion for summary judgment on September 15, 2016, asserting the easement is governed by the deed of dedication and under the terms of the deed the school has an absolute right to use the mutual access easement and to continue to use it in its current capacity. The School District also claimed it was not using lot 5 in an unlawful manner as alleged by TSG. Finally, the School District argued it had been using the easement in a manner consistent with its current use before TSG purchased lots 2 and 3 and TSG chose to complete its purchase of the lots anyway, indicating that the School District's use was not so burdensome as to prevent TSG's purchase.[2]

¶6 The appellate court will review the trial court's summary judgment decision under a de novo standard. This means the appellate court will review the entire summary judgement record without deference to the lower court and affirm the grant of summary judgment if the appellate court determines there is no dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Lowery v. Echostar Satellite Corp., 2007 OK 38, ¶11, 160 P.3d 959, 963.

¶7 The mutual access easement in the deed of dedication reads as follows:

D. Mutual Access Easements
The owner hereby grants and establishes perpetual non-exclusive mutual access easements depicted on the accompanying plat as "Mutual Access Easement" for the purposes of permitting the owner of each lot, their grantees, tenants, invitees, guests, successors and assigns to have vehicular and pedestrian access and passage within FLYNN PLAZA and to and from E. 71st Street South over, on and across the areas within each lot subject to a mutual access easement and to permit access to and from the properties to the East and West of FLYNN PLAZA. The mutual access easements shall be for the use and benefit of the owners of each lot within FLYNN PLAZA and their grantees, tenants, invitees, guests, successors and assigns, and shall be appurtenant to the ownership of each lot. Governmental agencies and the suppliers of utility services to FLYNN PLAZA shall have the use of such easements for vehicular and pedestrian access to the lots within FLYNN PLAZA.

¶8 TSG argues the mutual access easement is an appurtenant easement, as stated in the deed of dedication itself, and that the School District is impermissibly treating the easement as an easement in gross.[3] RESTATEMENT (THIRD) OF PROPERTY (Servitudes) §4.11 cmt. b, (2000). The Restatement (Third) of Property comment provides that "unless otherwise provided an appurtenant easement cannot be used to serve property other than the dominant estate[,]" which in this case is lot 5. Id. The Restatement comment states, [t]he rationale is that use to serve other property is not within the intended purpose of the servitude." Id.

¶9 For this reason, TSG argues the School District cannot use the appurtenant easement for the use of the Tulsa Union property that lies north and east of the dominant estate, because the Tulsa Union property is not the dominant estate. And the roadway extension which is on lot 5 and carries the traffic from the Tulsa Union property, over lot 5, to the mutual access easement, is not used for the benefit of lot 5 itself, but for the benefit of traffic flow from the Tulsa Union property.

¶10 The question presented here is whether the mutual access easement was intended to benefit property owned by a third party and whether such a third party benefit is permissible. The School District argues the language of the easement itself states it is intended to benefit "invitees" and "guests" and makes a specific provision for access to and from the easement from properties to the east and west of Flynn Plaza. As a result, the School District asserts the deed gives express permission for the Tulsa Union High School property's access to the easement because the high school is north and east of Flynn Plaza.[4]

¶11 The School District points out the mutual access easement was created by the deed of dedication and that "[w]hen property rights originate by deed, the scope of those rights should be construed in the same manner as other written contracts." Logan County Conservation Dist. v. Pleasant Oaks Homeowners Ass'n, 2016 OK 65, ¶14, 374 P.3d 755, 762. The primary objective is to determine the intent of "the parties at the time of the original conveyance." Id. And if the instrument creating the easement uses "plain and unambiguous" language, and there is no uncertainty in the language regarding the parties' intent, then "the intent of the parties is to be determined by the language of the written instrument alone." Id. (citing Beattie v. Grand River Dam Auth., 2002 OK 3, ¶12, 41 P.3d 377, 382; Johnson v. Butler, 1952 OK 207, 245 P.2d 720, 722).

¶12 We agree that an appurtenant easement cannot be used to serve property other than the dominant estate, unless otherwise provided. Beattie, 41 P.3d at 385 n.8. But the deed of dedication made the following provision for properties to the east and west of Flynn Plaza (emphasis added):

The owner hereby grants and establishes perpetual non-exclusive mutual access easements depicted on the accompanying plat as "Mutual Access Easement" for the purposes of permitting the owner of each lot, their grantees, tenants, invitees, guests, successors and assigns to have vehicular and pedestrian access and passage within FLYNN PLAZA and to and from E. 71st Street South over, on and across the areas within each lot subject to a mutual access easement and to permit access to and from the properties to the East and West of FLYNN PLAZA.

In addition, this language permits the owner of each lot, which includes the School District as owner of lot 5, as well as the owners' invitees and guests, to have access to the easement "over, on and across the areas within each lot[.]" Travelers coming from the Tulsa Union property are the invitees and/or guests of the owners of lot 5, the School District. And use of the easement to permit access to and from the properties to the east was contemplated in the deed of dedication, based on the easement language provided in the deed itself.

¶13 The district court's grant of summary judgment was based on the language in the deed of dedication. Logan County Conservation Dist., 374 P.3d at 762. And because the deed itself provides "otherwise," the appurtenant easement in this case is not limited to the service of only the dominant estate. The district court's summary judgment decision with respect to this issue is affirmed.

¶14 TSG also asserts the School District's use of the easement and the manner in which it has directed traffic from the Tulsa Union School property, over lot 5, to the easement unreasonably burdens the servient estate due to easement overuse. "The use made by the dominant estate owner must not unreasonably overburden the servient estate[, which in this case includes TSG's property at lots 2 and 3]. Hayes v. City of Loveland, 651 P.2d 466, 468 (Colo.Ct.App.1982); Thompson on Real Property, §60.04(a)(1); see Shell Pipe Line Corp. v. Curtis, 1955 OK 212, 287 P.2d 681, 685." Burkhart v. Jacob, 1999 OK 11, ¶11, 976 P.2d 1046, 1049. "Whether or not a use is reasonable is a question of fact. The burden of proof rests with the party relying on the easement[.]" Burkhart, 976 P.2d at 1050.

¶15 The Oklahoma Supreme Court outlined several factors to consider in determining the reasonableness of the proposed use of the easement:

(1) the purpose of the easement;

(2) the new use compared to the past use, taking into account the purpose of the land and the language granting the easement;

(3) the physical character of the easement;

(4) the burden on the servient land; and

(5) any other relevant factors.

Burkhart, 976 P.2d at 1050 (citing Hayes, 651 P.2d at 468). Burdens on the servient estate include such things as:

(1) decreased property value;

(2) increased noise and traffic or interference with the servient owner's peace and enjoyment of the land; and

(3) physical damage to the servient estate.

Id. (citing Shell Pipe Line Corp. v. Curtis, 1955 OK 212, 287 P.2d 681, 685; Swensen v. Marino, 306 Mass. 582, 29 N.E.2d 15, 17 (1940)).

¶16 From the record provided, there is considerable evidence that current and more recent use and traffic to the easement is different than past use and traffic patterns, including the configuration of pathways to the easement, increasing traffic, and the closing off of other access points that were at one time available. For example, prior to the construction of the roadway extension on lot 5, there was an access point to 71st street over what was called the Sam's Club Permanent Easement. The Sam's Club easement, which had been in use for a number of years, was blocked by the School District before the construction of the roadway extension, effectively cutting off access to 71st Street along that route. Shortly thereafter, construction of the roadway extension over lot 5 directed traffic to the mutual access easement, giving the Tulsa Union property access to 71st street through Flynn Plaza, instead of over the Sam's Club easement. There may also be fact issues to consider regarding the physical character of the mutual access easement, as TSG claims the School's more recent and frequent use, since the construction of the roadway extension, has caused damage to the easement at a rate in excess of that which was experienced prior to the closing of the Sam's Club easement and the construction of the roadway extension. TSG has also presented evidence that the purpose of the easement is not facilitated by the School District's current use and roadway extension over lot 5.

¶17 The School District disputes use of the roadway extension or the blocking of other easements has altered the traffic patterns to and from the easement in a manner that has caused any undue burden on the mutual access easement. The School also argues its current use of the easement is compatible with the access that was contemplated in the deed of dedication.

¶18 In granting summary judgment below on the issue of the School District's reasonable use of the mutual access easement, the district court essentially determined the School District's use was reasonable as a matter of law; and the district court lists a number of factors to support its summary judgment decision on this fact question. However, TSG has presented sufficient facts at this time to show traffic increase and damage to the servient estate to a degree that warrants a hearing on this fact issue; this is especially true because the burden to show the use is reasonable rests on the School District. Under the facts of this case, in which the roadway extension was built to lead the considerable Tulsa Union school traffic directly to the mutual access easement and the fact other access points were closed off in favor of funneling traffic to the mutual access easement, as well as facts that may implicate the factors outlined in Burkhart, the court cannot determine as a matter of law upon the record provided that the School District's use is reasonable and does not overburden the easement. Whether or not the use is reasonable and whether or not the burden is too great are questions of fact both parties will need to present to the finder of fact below. Burkhart, 976 P.2d at 1050. The granting of summary judgment upon this issue was premature.

¶19 TSG also argues that the School District is using lot 5 in an unlawful manner. Lot 5 is categorized for "Use Unit 11" under the terms of the City of Tulsa zoning code, which permits low intensity uses such as a light office facility use for the lot 5 property.[5] TSG asserts that by building the roadway extension so that the Tulsa Union school can utilize lot 5 for traffic flow, the School District has effectively converted the use of lot 5 from a low intensity use permitted by Use Unit 11, to a property that is operated for public school use, under a Use Unit 5 categorization for which the property is not currently zoned. The record indicates the School District sought to rezone lot 5 for school use to replace the Unit 11 zoning restriction with a Unit 5 designation, but the lot was not rezoned and remains a Use Unit 11 property.

¶20 The language provided in granting the mutual access easement does not limit easement access based on compliance with zoning requirements. Instead, the easement is framed in terms of the property ownership of each lot. For this reason, it is not clear from the deed of dedication or the remaining record available that violating the restrictions of use foreclose an owner's ability to access the easement. Although such violations may effect the court's analysis with respect to the fact questions of reasonable use and burdening the easement, the deed does not actually prohibit use of the mutual access easement based on zoning violations.[6]

¶21 Whether the School District is using lot 5 in violation of zoning ordinances is not, in itself, evidence that the School District has violated the easement or is engaged in easement misuse. TSG's attempt to directly equate a zoning violation, if in the event there is one, with a violation of the terms of the easement does not appear warranted under the language provided in the deed of dedication.

¶22 For the reasons provided herein, this court finds the appurtenant easement is not limited to only the service of the dominant estate, as the deed of dedication provides access to the easement for invitees and guests of the property owners and makes provisions for travel from properties to the east and west of Flynn Plaza. With respect to the district court's finding that the use by the School District is reasonable and does not burden the easement, TSG has presented a fact question regarding the School District's reasonable use of and burden on the easement that cannot be answered as a matter of law on the record provided.

¶23 The summary judgment order of the district court is AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

BELL, P.J.; and BUETTNER, J., concur.

FOOTNOTES

[1] The district court's summary judgment order makes reference to "the amended easement agreement." It should be noted the parties dispute the validity and effectiveness of the amended agreement. Upon the record provided, the amended agreement is not in force and effect, as it lacks the consent of the other lot owners and was not filed with nor approved by the city authorities prior to TSG's purchase of lots 2 and 3.

[2] It should be noted that TSG's rights and obligations, as well as the School District's, with respect to the easement are conferred by the deed of dedication, which must serve as the seminal "gauge of the parties' intent." Beattie v. Grand River Dam Auth., 2002 OK 3, ¶12, 41 P.3d 377, 382. As a result, the intention of the parties "must be ascertained solely from the language used in the conveyance. Messner v. Moorehead, 787 P.2d 1270, 1990 OK 17." Beattie, 41 P.3d at 382. For this reason, TSG can seek to enforce the deed or the contract that conferred the easement and is not foreclosed from asserting the School District violated the easement, even if those alleged violations originated and continued prior to TSG's purchase of the servient estate.

[3] An easement in gross is "by definition, useable without regard to the beneficiary's ownership or occupancy of any particular parcel of land." Restatement (Third) of Property (Servitudes) §4.11 cmt. b, (2000).

[4] "...on and across the areas within each lot subject to a mutual access easement and to permit access to and from the properties to the East and West of FLYNN PLAZA." Deed of Dedication, p.10 (emphasis added).

[5] "Section II. Planned Unit Development Restrictions

...
(3) The use of Lot 5, Block 1 shall be limited to the uses permitted by Use Unit 11 of the City of Tulsa Zoning Code."

Deed of Dedication, p. 7.

[6] TSG may also seek relief in the event the School District is violating zoning laws as an aggrieved neighboring land owner or under the terms of the deed, which is akin to a contract between TSG and the School District. Garrett v. City of Oklahoma City, 1979 OK 60, 594 P.2d 764, 765 (party aggrieved by zoning ordinance may seek injunction); O'Rourke v. City of Tulsa, 1969 OK 112, 457 P.2d 782 (neighboring land owners permitted to intervene in zoning case); Logan County Conservation Dist., 374 P.3d at 762 (easement conferred by deed akin to contract). In either event, the scope of the School District's compliance or lack thereof with zoning regulations is an issue that would need to be addressed by both parties in the court below.






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 1990 OK 17, 787 P.2d 1270, 61 OBJ 575, Messner v. Moorehead
Discussed
 1952 OK 207, 245 P.2d 720, 206 Okla 632, JOHNSON v. BUTLER
Discussed
 1955 OK 212, 287 P.2d 681, SHELL PIPE LINE CORPORATION v. CURTIS
Discussed at Length
 2002 OK 3, 41 P.3d 377, 73 OBJ 137, BEATTIE v. STATE ex. rel. GRAND RIVER DAM AUTHORITY
Discussed at Length
 1969 OK 112, 457 P.2d 782, O'ROURKE v. CITY OF TULSA
Discussed
 2007 OK 38, 160 P.3d 959, LOWERY v. ECHOSTAR SATELLITE CORP.
Discussed
 2016 OK 65, 374 P.3d 755, LOGAN COUNTY CONSERVATION DISTRICT v. PLEASANT OAKS HOMEOWNERS ASSOCIATION
Discussed
 1979 OK 60, 594 P.2d 764, GARRETT v. CITY OF OKLAHOMA CITY
Discussed
 1999 OK 11, 976 P.2d 1046, 70 OBJ 647, Burkhart v. Jacob
Discussed


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA