KI McREYNOLDS, Jimmie C. McReynolds and Alice McReynolds, Plaintiffs in Error,

v.

OKLAHOMA TURNPIKE AUTHORITY, De Leuw, Cather & Company, a corporation; E. P. Webb, Homer Harwell; Allen Craig, Eugene N. Wood, William J. Fell, W. H. Wheeler and Pate Engineering Company, a corporation, d/b/a Tulsa Turnpike Engineers, a joint venture; and Henry E. Coons, Defendants in Error.

No. 35600.

Supreme Court of Oklahoma.

Jan. 25, 1955.

Rehearings Denied Dec. 13, 1955.

Young, Young & Young, Sapulpa, for plaintiffs in error.

Collins & Moore, Sapulpa, James G. Davidson and A. M. Covington, Tulsa, Leon Shipp & C. E. Barnes, Oklahoma City, for defendants in error.

CORN, Justice.

The Oklahoma Turnpike Authority, hereinafter called the Authority, was created by legislative enactment in 1947. Laws 1947, pages 478–491, Secs. 1–23, 69 O.S.1951 § 651 et seq. Among the rights, powers and privileges conferred upon the Authority was the right of contract, to sue and to be sued, as well as liability for injury or damage resulting from negligence, or that of agents, servants or employees.

Subsequently (June 14, 1950) the Authority entered into a written contract with De-Leuw Cather & Company, hereafter called "The Engineer", for the performance of all engineering services required in the construction of a turnpike between the cities of Oklahoma City and Tulsa, Oklahoma. This contract required the Engineer to assume full responsibility for engineering administration and supervision of construction necessary to completion of the entire project, and specifically authorized the Engineer to employ or contract with others for any phase or portion of the project. This contract was in detailed form, and dealt explicitly with all matters connected with satisfactory completion of the turnpike.

The Engineer thereafter (June 26, 1950) entered into a contract with Fell and Wheeler, a co-partnership, Craig and Wood, a co-partnership, and Pate Engineering Company, a corporation, operating together as a joint venture as the Tulsa Turnpike Engineers. The latter organization was employed to perform all engineering services connected with the construction of a designated portion (east 24 miles) of the Turnpike. The contract was detailed in form and was explicit in regard to the nature and extent of the work to be performed and compensation to be paid therefor.

In August, 1950, the Engineer wrote the defendant Webb asking that he submit a bid for the drilling of soil test holes for the Turnpike. The letter detailed the services expected, equipment required and specifications to be met. In response to such inquiry Webb tendered a bid which was accepted by the Engineer, and was advised that the work required to be performed under the supervision of a representative (Donahue) of another company, (Alfred J.

Ryan Company), not a party herein, whose headquarters were in the Engineer's office.

January 26, 1951, defendants Harwell and Boyd, employees of Webb, and Henry Coons, employed by Tulsa Turnpike Engineers, were engaged in the drilling of soil test holes approximately one quarter mile south of plaintiffs' house. The wind was blowing about 35–40 miles per hour from the south, and the terrain was dry and covered with dry grass. During their operations it was discovered that a fire had started in the vicinity where Boyd's car and the drilling trucks, owned by Webb, were parked. These men, joined by others who noticed the fire and a neighbor of plaintiffs' who used his tractor to plow a fire guard, fought the fire until about noon and apparently were successful in extinguishing the fire when it had burned up to plaintiffs' property. When the fire appeared to be out everyone left the scene, but early in the afternoon the fire started again. Despite strenuous efforts of plaintiffs, their neighbors and friends, the fire burned over plaintiffs' property destroying the dairy barn, hay and farm equipment stored therein, the orchard, pasture and fences, and caused other items of loss directly attributable thereto, for all of which plaintiffs sought damages of $17,037.40.

The amended petition charged the Authority, the Engineer and E. P. Webb with numerous (18) acts and omissions constituting negligence, and that such joint and concurring acts of negligence were the direct and proximate cause of plaintiffs' injury and loss; that absolute liability attached to defendants by reason of violation of various statutes, both civil and criminal, respecting the setting, causing or permitting fire to escape onto another's premises; that absolute liability attached to defendants under Constitution, Art. 2, Sec. 24, which prohibits the taking or damaging of private property for public use without just compensation. The petition also asserted plaintiffs' right to double the amount of actual damage under 50 O.S.1951 § 19. The plaintiffs were permitted to further amend their petition, by joining the other parties enumerated as defendants in addition to the three above mentioned, and by such amendment to charge all defendants with having been engaged in a joint venture, and that each was guilty of the various acts of negligence alleged.

The Authority answered by general denial, and specifically denied existence of any agency relationship between itself and the Engineer, or with E. P. Webb. The Engineer filed a general denial, and specifically denied the existence of any agency, while affirmatively pleading that any loss which might have occurred resulted from contributory negligence. Defendants Henry Coons and Tulsa Turnpike Engineers filed answer in substantially the same form as the Engineer. Defendants Harwell and Webb answered separately by general denial and specifically denied existence of an agency relationship.

Plaintiffs filed reply denying the matters plead in the various answers contrary to the allegations of the amended petition, and upon the issues presented the case was tried to a jury.

The following narrative statement of the matters disclosed by a voluminous record is sufficient for consideration of this appeal. The parties stipulated that defendants Harwell and Boyd were in the general employ of defendant Webb at the time of the fire, and acting within the scope of their employment; and, that defendant Coons was employed as a core inspector by Tulsa Turnpike Engineers, a joint venture, when the fire occurred.

The morning of the fire defendants Boyd, Harwell and Coons were working approximately three-fourths of a mile south of plaintiffs' farm. The equipment consisted of two trucks, one for core drilling, the other to haul water for drilling purposes, to which was connected a one inch gravity flow hose for use in the drilling operations. Other than for a five gallon bucket and the hose there was no equipment suitable for use in case of fire. All three defendants were working under written orders from Tulsa Turnpike Engineers. About 10 a. m. the trucks were moved to a location about one-fourth mile south of plaintiffs' property, being stopped where the terrain was covered with dry grass, some of which was "over knee high" and which extended north

to plaintiffs' premises. The wind was from the south, blowing at speeds up to forty miles per hour. Boyd had driven his own automobile and parked it in the vicinity of the trucks. After lighting a cigarette with the cigarette lighter he approached Harwell and Coons, both of whom were smoking while engaged in conversation. Very shortly Harwell, who had stopped smoking, discovered that fire had broken out near Boyd's car, and they began fighting the fire, Harwell using the water bucket while the others used parts of their own clothing.

No warning was given of the fire, and after moving the trucks to safety defendants were joined by others who had observed the fire. They continued to fight the blaze until it reached a fireguard which a neighbor had plowed between the fire and plaintiffs' house and barn. At this point the fire apparently was brought under control, although some fence posts south of the farm were smoking. The parties fighting the fire dispersed, leaving the three employees at the scene, together with Webb who had arrived after the fire started. According to his own testimony, Boyd started to eat his lunch, but at Webb's insistence they all left the scene.

One witness (Colleasure) testified that he helped fight the fire in the morning, and during that time inquired of Harwell as to the origin and was advised it had started from one of the trucks. About noon, after the fire appeared to be out, the witness returned to Sapulpa where he spent some time before starting back to his home. Approaching plaintiffs' property he observed the fire blazing west of the orchard and called plaintiff (Mrs. McReynolds) to advise her of this, and then began to fight the fire with wet sacks. Help arrived soon thereafter, but they were unable to keep the fire from the barn. This witness was a building contractor, acquainted with real estate values, and was able to testify concerning the cost of replacing the barn, rebuilding fences, and also as to the value of the hay lost in the fire.

There was other evidence corroborating Colleasure's testimony relative to the conditions of the weather and terrain, the nature, extent and physical circumstances surrounding the fire, and that defendant Harwell positively stated the fire had started under the truck. Further, that Harwell and Coons told McReynolds, who came to the morning fire, that it was out, and assured him they were going to remain at the scene, since he had to return to town. This evidence was corroborated by numerous of plaintiffs' witnesses.

There was further testimony tending to establish the value of the improvements destroyed, the value of the orchard and pasture killed, and the other items for the loss of which plaintiffs sought damages.

At the close of plaintiffs' evidence each of the defendants interposed separate demurrers to the evidence. After hearing argument thereon the trial court sustained the demurrers of each defendant and entered judgment dismissing plaintiffs' action.

In view of our conclusion that the trial court's judgment was erroneous, for reasons hereafter set forth, and requires a remand of the case for further proceedings, no necessity exists for considering all of the propositions and counter propositions urged by the parties on appeal.

Examination of the amended petition discloses plaintiffs predicated their claim for damages upon two separate and distinct grounds. Plaintiffs first alleged that at all times involved the named defendants, through their officers, agents, servants and employees, were engaged in a joint and common enterprise; that at the time of the fire the particular employees were acting within the scope of their employment in furtherance of the common purpose, and that their various and concurrent acts of negligence (which were enumerated specifically) was the negligence of their various principals. The second ground declared upon was that by reason of certain statutory provisions, and also in view of the constitutional inhibition against damaging private property without just compensation, that absolute liability attached to defendants, irrespective of fault upon their part. As to the sufficiency of such allegations see 35 Am.Jur., Master and Servant, Sec. 593.

During the preliminary proceedings leading up to the settling of the issues herein

the defendants, by motions to make more definite and certain, and by demurrers to the amended petition, attacked the sufficiency of plaintiffs' allegations, both as to the acts and omissions relied upon as constituting negligence, and also as to the matter of the relationship of the parties. These motions and demurrers were overruled, and the case proceeded to trial upon the issues formed by the defendants' separate answers and plaintiffs' reply.

Presentation of plaintiffs' case reflected the matters summarized above relative to the circumstances relied upon to show negligence. Additionally, plaintiffs introduced in evidence the written contracts between the Authority and the Engineer, that of the Engineer with the Tulsa Turnpike Engineers, and the bid proposal, acceptance and written directions which formed the basis of Webb's employment and participation in the turnpike construction work under the direction of the Engineer.

█ It is recognized as sound law that one who sues another for injury alleged to have resulted from negligence of his agent or servant has the burden of establishing the essential facts creating liability. And, the sufficiency of the evidence proffered for such purpose is determined by the general rules which are applicable to other civil actions for damages. See 35 Am.Jur., Master and Servant, Sec. 599. The general rule in this jurisdiction is that where a contract of employment is in writing the question of the relationship created thereby is one of law for the trial court. City of Muskogee v. McMurry, 155 Okl. 203, 8 P.2d 670. However, we recognize and apply two further principles, viz.: whether one is an agent, servant or employee depends upon the facts peculiar to each case; and, although under a written contract the question whether the relation of employer and independent contractor ordinarily is a question of law for the court, a contract which purports to create such relationship will not protect the employer when it may be inferred from facts and circumstances revealed by evidence that, despite provisions of contract, the real relation was that of master and servant. Getman-MacDonell-Summers Drug Co. v. Acosta, 162 Okl. 77, 19 P. 2d 149; Ottinger v. Morris, 187 Okl. 517, 104 P.2d 254.

█ In this case plaintiffs introduced evidence of a state of facts and connected circumstances, relative to the actual cause of the damage, as to which the minds of reasonable men might have differed. And, there was additional evidence sufficient to provide the basis for some diversity of opinion concerning the real nature and extent of the relationship between the defendants. When defendants entered their demurrers to plaintiffs' evidence the trial court was not permitted to weigh such evidence, since the demurrers admitted every fact the evidence in the slightest degree tended to prove, as well as all inferences and conclusions reasonably and logically to be drawn therefrom. Moreover, even a conflict in plaintiffs' evidence tending to make any part thereof unfavorable to plaintiffs' case should have been considered by the court as withdrawn in passing upon the demurrers. Sharum v. Sharum, 82 Okl. 266, 200 P. 176; Byrd v. Marlin, 208 Okl. 655, 258 P.2d 649.

█ In such cases the settled rule is that it is reversible error for the trial court to sustain a demurrer to the evidence. Gordon v. Continental Ins. Co., 182 Okl. 240, 76 P.2d 1055. The judgment is reversed and the case remanded for a new trial.

JOHNSON, C. J., WILLIAMS, V. C. J., and DAVISON and BLACKBIRD, JJ., concur.

WELCH and HALLEY, JJ., concur in part, and dissent in part.

JACKSON, J., concurs in result.