2000 OK 50

Rosemary BOUZIDEN, Steve Bouziden, David Bouziden, Chris Bouziden, Eddie Kletke, Jeff Kletke, Lee Brandt, Norman Schaeffer, Bryce T. Benson, Keith Rose, David Wolgamott, Dennis Meyer, Elmer Meyer, Harold Lohmann, Randy Lohmann, Don Hughes, Bruce Sternberger, Leon Sternberger, Lloyd Sutton, Bar Boot Ranch, Inc., Brent Diel, Berta Diel, and Pearl Marie McMurphy, individually and as trustee of the Don McMurphy Trust, for themselves and as class representatives for all others similarly situated, Plaintiffs/Appellants,

v.

ALFALFA ELECTRIC COOPERATIVE, INC., Defendant/Appellee.

No. 90,622.

Supreme Court of Oklahoma.

June 27, 2000.

Rehearing Denied Sept. 26, 2000.

E.W. "Bill" Shaw, Matthew Neill Davis, Larry D. Lahman, Mitchell & DeClerck, P.L.L.C., Enid, Oklahoma, Donald L. Benson, Morford & Benson, Alva Oklahoma, Edward E. Sutter, Alva, Oklahoma, and Thomas G. Blakley, Blakley Law Firm, Enid, Oklahoma, for Plaintiffs/Appellants.

Ronald D. Wood, Richard T. McGonigle, Kevin S. Hoskins, Wood & McGonigle, P.L.L.C., Tulsa Oklahoma, for Defendant/Appellee.

Larry Derryberry, Patrick D. Shore, Derryberry, Quigley, Solomon & Naifeh, Oklahoma City, Oklahoma, for Oklahoma Association of Electric Cooperative, amicus curiae, on certiorari.

BOUDREAU, Justice:

¶1 This is an appeal from a judgment on a jury verdict in favor of defendant, Alfalfa Electric Cooperative, Inc. (AEC), in a negligence suit, certified as a class action. Plaintiffs, Rosemary Bouziden, et al., as individuals and representatives of approximately 150 families (plaintiffs), sought damages for loss of property due to a wildfire that spread over some 80,000 acres. Three questions are presented on certiorari: 1) Did AEC owe a nondelegable duty of care to the plaintiffs imposed either by the law of easements or because AEC was engaged in an inherently dangerous activity; 2) Did the trial court correctly allow the jury to decide whether an independent-contractor relationship existed between AEC and O & M; and 3) Did the trial court err by instructing the jury on independent, intervening cause? We answer the first question in the negative and the second and third in the affirmative. Accordingly, we vacate the opinion of the Court of Civil Appeals, Division I, and reverse the judgment of the district court and remand this cause for further proceedings consistent with this opinion.

## I. Factual Background

¶2 This negligence class action arose out of the following basic facts. Since 1978, AEC had contracted with O & M Power Line Construction Co. (O & M) to replace its utility poles. For several years, the contract between AEC and O & M was in writing. For 1996, the written contract had been orally extended. The basic terms of the contract provided that AEC would identify the poles to be replaced and O & M would perform the work at its discretion; AEC would supply the new utility poles and O & M would provide all necessary tools, equipment, and labor; O & M would be paid for each completed project upon AEC's inspection and approval of the work; and either party could terminate the contract at will.

¶3 On February 22, 1996, O & M was changing out utility poles in a branch line off AEC's main transmission line in Woods County, Oklahoma. The branch line was on

AEC's easement running through rangeland approximately fifteen miles north of Freedom, Oklahoma. The line had not been energized for about two years.

¶4 The job required a digger truck, a large truck equipped with a large auger or digger unit, an overhead boom, and stabilizing outriggers. To get to the utility poles, the truck had to traverse rough terrain, with steep canyons and thickets. O & M positioned the truck and then used a winch to position the new poles in front of the truck. Shortly thereafter, a fire started underneath the truck. Attempts to drive the truck over the poles were unsuccessful. The truck ignited and the fire spread to the surrounding brush and grass.

¶5 The conditions in the area were near drought and O & M could not extinguish the fire. With the assistance of the Freedom Volunteer Fire Department, the fire was nearly contained. However, the wind speed increased and the fire escaped the fire breaks. The fire spread across approximately 80,000 acres of extremely dry rangeland and crop land in northern Woods County, Oklahoma, and southern Comanche County and Barber County, Kansas, before it was ultimately contained some two days later.

¶6 This negligence action was filed to recover damages for loss of buildings, fences, livestock, machinery and equipment, crops, and native grassland caused by the wildfire. AEC and O & M were named as defendants. The action was brought on behalf of the plaintiffs as individuals and as representatives of approximately 150 families who suffered loss caused by the wildfire. The trial court certified the class and the plaintiffs/appellants as class representatives. Prior to trial, O & M's liability insurance carrier paid an amount equal to the policy limits into the court and O & M was dismissed as a party defendant.

¶7 Before the trial court, plaintiffs contended that, as a matter of law, AEC's responsibility for the performance of work on its easement was not delegable to a third-party contractor and requested a jury instruction that AEC was liable for the negligent acts of O & M. The court refused to give the instruction. Instead, the trial court in-

structed the jury on the basic elements of an independent contractor relationship and the general rule that one is not liable for the acts and omissions of an independent contractor. The jury returned a verdict in favor of AEC and the trial court entered judgment thereon. Plaintiffs timely appealed.

¶8 In their petition in error, plaintiffs contended that the trial court erred by failing to hold, as a matter of law, that AEC's responsibility for the manner in which work was performed on its easement and right of way could not be avoided by delegating the work to a third party. Plaintiffs also attacked the sufficiency of the evidence produced at trial to support a finding that AEC and O & M entered into an independent contractor relationship. Finally, plaintiffs argued that the trial court erred in instructing on the issue of intervening cause.

¶9 In support of the argument that AEC could not avoid liability by delegating the work to an independent contractor, plaintiffs relied upon the "non-delegable duty exception" to the independent-contractor tort rule expressed in *Minnetonka Oil Co. v. Haviland*, 55 Okla. 43, 155 P. 217 (1916), and its progeny *Shell Pipe Line Corp. v. Curtis*, 1955 OK 212, 287 P.2d 681, and *Cities Service Gas Company v. Christian*, 1957 OK 247, 316 P.2d 1113, 1115. While recognizing that these cases involved claims by the holders of the servient estate, plaintiffs argued that *Oklahoma Ry. Co. v. Boyd*, 140 Okla. 45, 282 P. 157 (1929), extended the non-delegable nature of the duty, not only to the holder of the servient estate, but to all other third parties.

¶10 In response, AEC contended that *Minnetonka* and its progeny impose a non-delegable duty upon the dominant estate holder to use the easement in a manner that will not cause harm to the servient estate holder only. AEC argued that the holding in *Boyd* is premised upon the law relating to riparian landowners and not the law of easements.

¶11 The Court of Civil Appeals held that AEC owed a non-delegable duty of care to any third party and the duty of care could not be delegated to an independent contrac-

tor. While acknowledging that most of the easement cases discussing non-delegable duties involved claims by owners of the servient estate against the dominant tenant, the Court of Civil Appeals observed that none of those cases expressly limited its pronouncement to claims for damages suffered by the servient estate holders. The Court of Civil Appeals concluded that the trial court should have applied *Boyd.* Recognizing that O & M's status as an independent contractor and AEC's vicarious liability for O & M's negligence were the central factual and legal issues at trial, the Court of Civil Appeals found that failure to properly instruct the jury very probably affected the result and reversed the judgment entered on the jury verdict. The Court of Civil Appeals did not consider the issues raised and argued by plaintiffs concerning the status of the relationship between AEC and O & M and the insufficiency of the evidence to allow an intervening cause instruction. We granted AEC's petition for writ of certiorari.

## II. AEC did not owe plaintiffs a non-delegable duty imposed either by the law of easements or because AEC was engaged in an inherently dangerous activity.

### A. The independent contractor rule.

¶ 12 An independent contractor is one who agrees to perform a certain service without the control, supervision, or direction of his employer in all matters connected with the performance of the service except the result or product of the work.[1] Generally, an employer is not liable for the negligent acts or omissions of an independent contractor committed in the course of performing the contracted service.[2] This non-liability rule is based on the notion that since the employer has no right of control over the manner and method in which the service is performed, the employer is not answerable for an injury resulting from the manner in which the independent contractor carries out the details of the work.[3]

### B. AEC, as the owner of an easement, did not owe a non-delegable duty to the plaintiffs.

¶ 13 The independent-contractor rule of non-liability has been eroded by well-recognized exceptions. One exception is that an employer who performs work through an independent contractor is liable for damages to third persons caused by the negligence of the independent contractor where the employer owes a non-delegable contractual or defined legal duty to the injured party.[4] In cases of non-delegable duty, an employer may be held liable for the negligence of an independent contractor although the employer has exercised reasonable care in all endeavors. In effect, "non-delegable duty" cases become ones of vicarious liability.[5]

¶ 14 Duty depends upon the relationship between the parties and the general risks involved in the undertaking; and, whether a defendant stands in such relationship that the law will impose upon the de-

---

1. *World Publishing Co. v. Smith,* 195 Okla. 691, 161 P.2d 861, 862 (1945), *Syllabus by the Court,* 1.

2. *Hudgens v. Cook Industries, Inc.,* 1973 OK 145, 521 P.2d 813.

3. *World Publishing Co. v. Smith,* 161 P.2d at 863 (Under the doctrine of respondeat superior, employer's vicarious liability for the negligence of the employees of an independent contractor arises from the employer's control over the performance of the work.) *Cities Service Oil Co. v. Kindt,* 200 Okla. 64, 190 P.2d 1007, 1012 (1947) (Whether a relationship is one of master and servant or one of independent contractor depends upon the power of control which the employer is entitled to exercise over the execution and performance of the work.)

4. *Hudgens v. Cook Industries, Inc.,* 521 P.2d at 815; *Minnetonka Oil Co. v. Haviland, supra.*

5. Persons and entities held vicariously liable for the negligent acts of independent contractors on a theory of non-delegable duty include a municipality's responsibility, under ordinance, to protect pedestrians from defective sidewalks, *City of Hugo v. Nance,* 39 Okla. 640, 135 P. 346 (1913); an innkeeper's statutory obligation to protect its guests, *Huckins Hotel Co. v. Clampitt,* 101 Okla. 190, 224 P. 945 (1924); railroad's statutory obligation to preserve roadways for benefit of public, *Choctaw, O. & W. Ry. Co. v. Wilker,* 16 Okla. 384, 84 P. 1086 (1906), 3 L.R.A. (N.S.) 595; and, a lessee's contractual obligation to preserve the lessor's rights and property, *Minnetonka Oil Co. v. Haviland, supra.*

fendant an obligation to the plaintiff is a question of law.[6] Whether a duty is non-delegable is also a matter of law.[7] Questions of law are reviewable by a *de novo* standard and the appellate courts have plenary, independent, and non-deferential authority to re-examine the legal rulings.[8]

■ ¶ 15 The parties agree that AEC, as owner of the easement, had a non-delegable duty in using and maintaining its easement to avoid negligently injurying the servient estate. However, plaintiffs contend that the law of easement extends this non-delegable duty to all landowners who suffer harm as a result of a breach of the duty not just to the holder of the servient estate.[9] The Court of Civil Appeals agreed.

■ ¶ 16 We disagree. According to our extant jurisprudence, easement law imposes a non-delegable duty on the dominant tenant to use the easement in a manner so as to not damage or injure the servient estate.[10] These cases teach that the non-delegable nature of the duty, while imposed by law, arises from the relationship between the dominant and servient tenants created by the easement grant. The cases do not suggest that the law extends the non-delegable nature of the duty to third parties who have no interest in the servient estate.

¶ 17 The early case of *Minnetonka Oil Co. v. Haviland, supra,* determined that the defendant oil company, by reason of an oil and gas lease, owed a duty to the plaintiff landowner to drill an oil well without doing any unnecessary damage to the plaintiff's property. The court reasoned that because the work arose out of the lease between the plaintiff and the defendant, the defendant was liable for the negligent performance of the work without regard to the means by which it undertook to perform the work. Concluding that the oil company could not escape liability by delegating its duty owed the landowner, *Minnetonka* said that the landowner stood "in an entirely different relation to the defendant as to their rights and its duty in the premises from a third person who was a stranger to the contract [lease] under which the work was done." [11]

¶ 18 *Shell Pipe Line Corp. v. Curtis, supra,* determined that under the grant of the easement, the defendant oil company owed a duty imposed by law to use its dominant estate so as not to injure or damage the plaintiff. Concluding that the oil company could not escape liability by delegating its duty owed the owner of the servient estate, *Shell Pipe Line* explained that the "duty arose out of the contract providing for the right of way ... [but] the law and not the contract imposed this duty upon defendant." [12]

6. *Union Bank of Tucson v. Griffin,* 1989 OK 47, 771 P.2d 219, 222. *Wofford v. Eastern State Hospital,* 1990 OK 77, 795 P.2d 516, 519; *Delbrel v. Doenges Brothers Ford, Inc.* 1996 OK 36, 913 P.2d 1318, 1320; *Rose v. Sapulpa Rural Water Co.,* 1981 OK 85, 631 P.2d 752, 756.

7. *Oklahoma Ry. Co. v. Boyd,* 282 P. at 162.

8. *Neil Acquisition, L.L.C. v. Wingrod Investment Corp.,* 1996 OK 125, 932 P.2d 1100.

9. The holder of the servient estate under AEC's easement is not a party nor a member of the certified class of plaintiffs herein.

10. *See,* cases cited in *Cities Service Gas Company v. Christian,* 316 P.2d at 1115. An easement is a grant of limited use of land which burdens the servient estate for the benefit of the dominant estate. An easement involving one piece of land, as in this case, creates a relationship between the easement holder, the dominant tenant, and the owner of the servient estate, the servient tenant. The servient estate is burdened by the dominant tenant's use consistent with the easement and the

dominant tenant has a duty not to interfere with the reasonable use of the servient estate. See, Cribbet, *Principles of the Law of Property,* 2d Ed., 335–345.

11. 155 P. at 219. In *Minnetonka,* plaintiffs owned a track of land upon which defendant had an oil and gas lease. Defendant employed an independent contractor to drill the well. In drilling the well, the fence around plaintiffs' peach orchard was torn down and after plaintiffs repaired the fence, it was torn down again. Plaintiffs' stock went into the peach orchard and damaged it. Trial court omitted defendant's proffered evidence of independent contractor, which was affirmed upon the "non-delegable duty" exception to the independent contractor rule.

12. 287 P.2d at 685. In *Shell Pipe Line,* plaintiff owned fifty acres devoted principally to pasturing cattle and defendant's pipeline traversed the pasture under a previous right of way agreement. Defendant's independent contractor uncovered the pipeline by opening a ditch four feet wide

¶ 19 *Cities Service Gas Company v. Christian, supra,* also arose out of a pipeline easement. In that case, the injured party leased the land to pasture cattle and the defendant had a pipeline easement across the same land. *Cities Service Gas* again determined that the law imposed a non-delegable duty "upon the holder of a dominant estate to so use the property as not to injure or damage the servient estate." [13]

¶ 20 The Court of Civil Appeals conceded that most of the cases discussing non-delegable duty in the context of easements were actions brought by holders of the servient estate. However, the Court of Civil Appeals found it to be significant that these cases do not expressly limit application of the "non-delegable duty" rule to damages suffered by holders of the servient estate. The Court of Civil Appeals then referred to *Oklahoma Ry. Co. v. Boyd, supra,* for the proposition that the non-delegable duty arising from the grant of an easement extends to all third parties.

¶ 21 The reliance by the Court of Civil Appeals on *Boyd* is misplaced because the non-delegable nature of the duty recognized in *Boyd* did not arise from a relationship created by an easement grant.[14] Rather, the non-delegable duty in *Boyd* rested on the nature of the activity, i.e., interference with the natural flow of water. In *Boyd,* the railway owned a right of way and embankment along the right of way that crossed the North Canadian River. The embankment had three openings for the passage of water and was constructed so flood water could run over the top of the embankment. The rail-

way permitted Oklahoma City to use the right of way and embankment for a diversion dam in connection with the city's water system and reservoirs. The height of the embankment was raised and a single opening was left in it for the passage of water. A heavy rainfall resulted in a volume of flood water too great for the single passageway. The flood water could not go over the elevated embankment and it backed up onto plaintiff Boyd's property. The plaintiff sued the railway and the city for interfering with the natural flow of water. *Boyd* determined that when the railway first constructed its embankment across the North Canadian River, it owed the adjoining landowners and other third persons similarly situated a non-delegable duty not to obstruct the flow of water in the stream so as to cause them damage.[15] While defined as a non-delegable duty, the duty imposed in *Boyd* rested on the interference with the natural flow of water and not on the relationship created by an easement.[16]

¶ 22 In summary, this jurisdiction has not extended the non-delegable duty of care owed by the dominant tenant of an easement to the servient tenant to all other third parties. All cases discussing the non-delegable duty imposed upon the dominant tenant were actions brought by holders of the servient estate. Language in these cases clearly suggests that the non-delegable duty is limited to the holders of the servient estate. Interpreting *Boyd* in the manner suggested by plaintiffs would create a legal anomaly where a fee owner may delegate duties owed to adjoining landowners and others but an easement owner may not delegate such duties.[17] Accordingly, we hold, under

and three feet deep. Plaintiff's cow fell into the ditch and plaintiff was injured in attempting to remove the cow. Defendant could not evade liability for breach of its "non-delegable duty" to the servient estate by showing an independent contractor opened the ditch.

13. 316 P.2d at 1115. In *Cities Service Gas,* the parties had no contractual relationship, but they were the estate holders under an easement. The dominant estate holder was liable when its employees left cans of poisonous lead paint in the pasture and plaintiff's cattle died from eating the paint.

14. *Boyd,* 282 P. at 161, did not involve an easement, rather the Oklahoma Railway Co. owned

the right of way that crossed the North Canadian River.

15. 282 P. at 161–162.

16. Interfering with the natural flow of water is an activity that may be viewed as peculiarly dangerous. It is very similar to those categories of activity viewed as inherently dangerous. *Prosser and Keeton on Torts,* 5 th Ed., § 71, 510, states that the exceptions making the employer liable for the acts of its independent contractor overlap and shade into one another.

17. A landowner owes adjoining landowners the duty to take such precautions and use such means to lessen the danger to adjoining property

the facts and circumstances in this case, AEC, as an easement holder, did not owe a non-delegable duty to the plaintiffs.

## C. AEC was not engaged in an inherently dangerous activity that precluded it from delegating its duty of care to O & M.

¶ 23 As an alternative argument, plaintiffs argue that AEC engaged in a category of activity that can be described as inherently dangerous and accordingly it may not avoid liability by delegating the work to an independent contractor.

¶ 24 Inherently dangerous activity is another recognized exception to the independent contractor rule.[18] Inherently dangerous activity includes work that is obviously dangerous and work which in the ordinary course of events will cause injury to others if certain precautions are not taken.[19]

¶ 25 Companies engaged in transmitting electricity are engaged in a business that is inherently dangerous.[20] An electric transmission company, in using an easement or right of way for its poles, wires, and appliances, must use that degree of care, caution and circumspection in keeping with the dangerous character of its business.[21] As a distributor of electricity, AEC has a duty to anticipate and guard against events which may reasonably be expected to occur because of the inherently dangerous nature of the industry.[22] AEC cannot avoid liability for breach of this duty by delegating it to an independent contractor.[23]

¶ 26 However, an employer engaged in an inherently dangerous activity is liable only for the risks inherent in the activity itself, which the employer should contemplate at the time of its contract.[24] The employer is not liable when the contractor creates a new risk, not inherent in the work itself and not reasonably contemplated by the employer.[25]

¶ 27 In this case, AEC hired O & M to replace utility poles in its electricity distribution system that had been de-energized for some two years. While replacing the utility poles, a fire ignited under a large digger truck owned by O & M after it had been driven over rough terrain. Although the cause of the fire is unknown, it is undisputed that the electricity transmitting wires were not related to the cause or spread of the fire. Under these facts, the alleged negligence of O & M is not related to a risk inherent in the normal and usual manner of doing the work. Rather, the alleged negligence may be properly viewed as collateral negligence.[26] Ac-

---

as a person of ordinary prudence, conversant with the business and understanding its operations and the danger to adjoining property incident thereto. *Texas Co. v. Robb*, 88 Okla. 150, 212 P. 318 (1923), *Syllabus by the Court.*

18. *Hudgens v. Cook Industries, Inc.*, 521 P.2d at 815.

19. *Id.*

20. *City of Altus v. Wise*, 193 Okla. 288, 143 P.2d 128 (1943); *Rotramel v. Public Service Company*, 1975 OK 91, 546 P.2d 1015.

21. *Earl W. Baker Utilities Co. v. Haney*, 1950 OK 128, 203 Okla. 91, 218 P.2d 621.

22. *Oklahoma Gas & Electric Co. v. Wilson*, 172 Okla. 540, 45 P.2d 750, 752–753 (1935).

23. Oklahoma case law in this regard is entirely consistent with the *Restatement of Torts, Second*, § 428 cited by the dissent. Section 428 of the *Restatement* reads:

An individual or a corporation *carrying on an activity* which can be lawfully carried on only under a franchise granted by public authority and *which involves an unreasonable risk of harm to others,* is subject to liability for physical harm caused to such others by the negligence of a contractor employed to do work in carrying on the activity. (Emphasis added.)
Section 428 is "principally applicable to public service corporations which, as such, are permitted by their franchise to use instrumentalities which are *peculiarly dangerous* unless carefully operated." *Id.* at 420, comment a. (Emphasis added.)

24. *See, Restatement of Torts, Second*, § 427, 417 comment d. The *Restatement of Torts, Second,* § 428, cited by the dissent, also recognizes this principle. Comment a. to § 428 indicates that the rule does not apply to activities which involve no special danger.

25. *Id.*

26. *Missouri, K. & O.R. Co. v. Ferguson*, 21 Okla. 266, 96 P. 755, 758 (1908).

cordingly, we hold, under the facts and circumstances in this case, AEC did not owe a non-delegable duty arising from an inherently dangerous activity.

### III. The trial court correctly allowed the jury to decide whether an independent-contractor relationship existed between AEC and O & M.

¶ 28 Plaintiffs asserted in their brief in chief that the trial court should have ruled as a matter of law that O & M was an employee or agent of AEC and the court erred when it allowed the jury to consider the nature of the relationship between the parties. Because the Court of Civil Appeals viewed the "non-delegable duty" issue as dispositive of the appeal, the court did not address this proposition of error. Under the directive of Rule 1.180(b), we address the issue.[27]

¶ 29 Whether a person is considered an employee or an independent contractor depends upon the facts peculiar to each case.[28] The decisive test for determining whether one is an employee or an independent contractor is the right to control which the employer is entitled to exercise over the physical details of the work.[29] Where the evidence is conflicting or where reasonable people may differ in conclusions therefrom, the issue is one of fact for the jury.[30]

¶ 30 At trial both parties submitted considerable evidence on the issue. We have examined the record and find the evidence concerning the status of the relationship is in substantial dispute. Accordingly, the question of the· legal relationship between AEC and O & M is not one that could be resolved as a question of law. The trial court properly submitted the issue as one of fact for determination by the jury.

### IV. The evidence produced at trial did not support an instruction on independent, intervening cause.

¶ 31 The Freedom Volunteer Fire Department responded to the call from the AEC dispatcher. At the time they arrived, the fire involved approximately one acre of ground. Before the fire could be totally extinguished,[31] the wind speed increased and the fire escaped the firebreaks and spread rapidly across the grasslands.

¶ 32 At trial, AEC requested the court to instruct on intervening cause and provided the court instruction No. 9.8 of the Oklahoma Uniform Jury Instructions, Civil, the instruction on intervening cause. The court included this instruction in the instructions given to the jury. In their brief in chief, plaintiffs contended that the evidence produced at trial did not warrant the submission of this instruction to the jury. Because the Court of Civil Appeals viewed the "non-delegable duty" issue as dispositive of the appeal, that court did not address this proposition of error. Under the directive of Rule 1.180(b), we address the issue.

¶ 33 The requirements for the proper application of instruction No. 9.8 are set out in *Thompson v. Presbyterian Hospital, Inc.*, 1982 OK 87, ¶ 15, 652 P.2d 260, 264:

> The intervening factor which will break the causal nexus between the defendant's negligence and the resulting injury is called the "supervening" cause. A true supervening cause that will operate effectively to insulate the original actor from liability must meet a three-prong test. It must be (1) independent of the original act, (2) adequate of itself to bring about the result and (3) one whose occurrence was not reasonably foreseeable. Unless these character-

27. Where the Court of Civil Appeals fails to decide an issue raised and briefed by the party prevailing on appeal, this Court, on certiorari, will decide the issue or it will be remanded for consideration by the Court of Civil Appeals. Rule 1.180(b), Rules of the Supreme Court, 12 O.S.Supp.1999, ch. 15, app. and *Hough v. Leonard*, 1993 OK 112, 867 P.2d 438.

28. *McReynolds v. Oklahoma Turnpike Authority*, 1955 OK 13, 291 P.2d 341.

29. *Dodd v. Rush*, 1965 OK 138, 406 P.2d 261.

30. *Agee v. Gant*, 1966 OK 31, 412 P.2d 155.

31. Defendant contends that the Freedom Fire Department allowed smoldering embers to remain in a tree and acknowledges that the majority of the damage to plaintiffs' property occurred when unusually strong winds blew unextinguished embers out of a tree and into the fields.

istics are met, the chain of causation which extends from the original act to the injury is not broken. Whenever the causal factor under examination qualifies as one of supervening quality, the original negligence may be said to undergo a legal metamorphosis into a remote cause or "mere condition".

¶ 34 In submitting the instruction to the jury, it is not clear whether the trial court considered the mercurial nature of the winds or the alleged negligence of the Freedom Fire Department as an intervening act. However, neither of these factors was sufficient to interrupt or break the causal connection between O & M's act and plaintiffs' injuries. Neither satisfied any of the conditions of the three-prong test set forth in *Thompson*. First, the fire was able to escape the firebreaks and spread to the grasslands as a result of unextinguished embers blowing out of a tree. Accordingly, it cannot be said that the spread of the fire derived from a source independent of O & M's act. Second, neither the wind nor the alleged negligence of the firefighters was adequate by itself, separated from O & M's act, to bring about the fire. Third, the fact that variable weather conditions, including strong winds, or the negligence of others might intervene to exacerbate the severity of a fire is clearly foreseeable.[32]

¶ 35 The evidence presented at trial was wholly insufficient to support the giving of an instruction on intervening cause. It is error on the part of the trial judge to submit an issue not supported by competent evidence to the jury.[33] However, a jury verdict will not be disturbed because of error in instructing the jury unless the error was prejudicial to the complaining party.[34] The standard of review of a challenged instruction is whether there is a probability that the jurors were misled and thereby reached a different result than they would have reached but for the error.[35]

¶ 36 The jury entered a general verdict in favor of AEC and against the plaintiffs. The challenged instruction interjected intervening cause as a central issue in the case. It provided AEC with a complete defense which was not available to it under the evidence. It is almost axiomatic that to submit an issue unsupported by competent evidence to the jury would be prejudicial error on the part of the trial court.[36] We find there is a probability that the jurors were misled and thereby reached a different result than would have been reached but for the erroneous instruction. Accordingly, this case must be reversed and remanded to the district court.

¶ 37 **OPINION OF THE COURT OF CIVIL APPEALS, DIVISION I, VACATED; JUDGMENT OF THE TRIAL COURT REVERSED AND CAUSE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

¶ 38 SUMMERS, C.J., and HODGES, LAVENDER, WATT, and WINCHESTER, JJ., concur.

¶ 39 KAUGER, J., concurs in part and dissents in part.

¶ 40 HARGRAVE, V.C.J., and OPALA, J., dissent.

OPALA, J., dissenting.

¶ 1 The court *holds* today that Alfalfa Electric Cooperative, Inc., (AEC), *did not owe to the plaintiffs a nondelegable duty of care.*

32. For a discussion of foreseeable, intervening consequences see *Prossor and Keeton on Torts*, 5th Ed., § 44, 303.The alleged negligence of the firefighters would be considered a concurrent cause. This Court stated in *Thompson*, 652 P.2d at 264:

> Not every intervening cause will insulate the original negligent actor from liability. If a causal factor is capable of combining or acting in concert with another act or omission to produce the injury, each negligent actor will be subject to liability for the harm that evolves. The same is said to be true when several causes operate to bring about a single result.

33. *Cities Service Co. v. Gulf Oil Corp.*, 1999 OK 14, ¶ 34, 980 P.2d 116.

34. *Eversole v. Oklahoma Hospital Founders Association*, 1991 OK 80, 818 P.2d 456, 458.

35. *Smicklas v. Spitz*, 1992 OK 145, 846 P.2d 362, 368.

36. *Cities Service Co. v. Gulf Oil Corp.* 980 P.2d at 133.

Its decision is rested *solely* on the principles that govern the relationship between the owners of dominant and servient estates. I recede from today's pronouncement. I would (a) *declare* that Oklahoma's common law *must be consistent* with the text adopted by § 428 of the Restatement (Second) of Torts[1] and (b) *find* reversible *error in the trial court's failure* to instruct the jury that—as a matter of law—the electric cooperative, which owes a nondelegable duty to the public, *cannot free itself* from liability by proof that *the actual harm-dealing actor performing the hirer's work is an entity which stood in the status of an independent contractor.*

## I

## ANATOMY OF THE CASE

¶2 AEC, a rural electrical utility company, hired a construction company, O & M Power Line Construction Co. (O & M), to replace power-line poles on the cooperative's easement. The poles were located in a drought-stricken area. During the construction O & M's truck started a fire that engulfed the grass beneath it and then quickly spread far and wide. The resulting conflagration damaged over seventy-seven thousand acres of range land.

¶3 Landowners affected by the fire brought a class action against both AEC and the construction company. In the course of trial proceedings the *nisi prius* court refused to give a jury instruction, requested by the landowners, which would have exposed AEC to liability for the construction company's negligence. The jury returned a verdict for AEC and the landowners appealed.

¶4 The Court of Civil Appeals reversed, holding that—as a matter of law—**AEC had a nondelegable duty to use its easements**

**in a non-negligent manner regardless of whether harm resulted from work done by one who was an independent contractor.** In today's pronouncement **the court holds that the benefits of the servient estate owner's nondelegable duty extends solely to the dominant estate holder and no one else.** The court's opinion, which severely restricts the outer limit of the law's five-hundred-year-old nondelegable duty concept that is applicable here, **overlooks the dispositive issue**—*that of the essence of AEC's liability qua a franchised utility.* **Today's pronouncement ignores AEC's status as a public service company and refuses to impose upon it a nondelegable duty of due care in laying transmission lines.** *The degree of care that is attached by law to the interaction of servient with dominant estate holders, inter se, is irrelevant to the point here in contest.* I hence recede from the court's view, implicit in today's holding, **that a rural electric cooperative,** *qua* **public service utility, does not owe to the public a nondelegable duty of ordinary care in erecting and maintaining its transmission facilities.**

## II

## AS A PUBLIC UTILITY, A RURAL ELECTRIC COOPERATIVE HAS A NONDELEGABLE DUTY TO THE PUBLIC AND CANNOT ESCAPE ITS LIABILITY FOR NEGLIGENCE OF AN INDEPENDENT CONTRACTOR ENGAGED IN CONSTRUCTING THE UTILITY'S POWER LINES.

¶5 AEC is an electric cooperative organized under the Rural Electric Cooperative Act.[2] Rural electric cooperatives are defined by statute as public utilities.[3] Restatement (Second) of Torts, § 428,[4] which reflects the

---

1. For the pertinent text of § 428 of the Restatement (Second) of Torts, see *infra* note 4.

2. 18 O.S.1991 §§ 437.1 et seq.

3. The terms of 17 O.S. 1991 § 158.50(5) define a "domestic public utility" as a "person doing business in the state, including any other person controlling such a domestic public utility, any substantial portion of the revenues of which, either directly or indirectly, are derived from the

business of providing utility service in this state . . . ."

4. The Restatement (Second) of Torts § 428 states that:

An individual or a corporation carrying on an activity which can be lawfully carried on only under a franchise granted by public authority and which involves an unreasonable risk of harm to others, is subject to liability for physi-

current status of the American common law,[5] teaches that a public utility company is liable for the negligence of its independent contractor in performing work that is part and parcel of the company's duty *qua* public utility.

¶ 6 The concept of nondelegable duty owed by a public utility originated in the early common law.[6] The immediate predecessor of a present-day public utility was then known as a "public calling" an activity serving the public good.[7] Precursors of modern utilities, such as operators of ferries or mills, were merchants with a special franchise granted to them as a monopoly with the understanding that the holder would be available for the public good, fulfilling a needed community service.[8] Duty was conferred by the government—State or Crown—as a public trust and, once accepted by the recipient, was enforced for the public benefit.[9] *Before the tort rule of respondeat superior was ever crafted, public calling operators bore liability that could not be shared with anyone hired to do work integral to their public calling.*[10]

¶ 7 The public calling theory has been incorporated into present-day law that governs common carriers, such as trucking companies and railroads, as well as all public utilities, including rural electric cooperatives. **The essence of public utility liability is best understood when it is compared with the legal responsibility of common carriers. The latter class owes to a customer the highest degree of care which may not be lowered by hiring an independent contractor to assist with shipping the goods. In short, although a hirer cannot ordinarily be held liable for the negligence of an independent contractor, that rule does not apply where the hirer contracts for the performance of a duty imposed by law.**[11] While a common carrier (or innkeeper) may engage an independent contractor to perform some of the former's nondelegable function, it may not pass off to the latter the ultimate legal responsibility for the proper performance of that duty.[12] Under the nondelega-

cal harm caused to such others by the negligence of a contractor employed to do work in carrying on the activity.

5.  *See* Shirley Abrahamson, *Refreshing Institutional Memories: Wisconsin and the American Law Institute, The Fairchild Lecture*, 1995 Wis. L. Rev. 1, 3 (1995), where the author states: "... The restatements 'provide lawyers and judges with carefully formulated descriptions of the [common] law and *traditionally have served as authoritative guides for both legal briefs and judicial opinions.*'" (emphasis supplied).

6.  The earliest cases that address themselves to nondelegable duties by public service providers date back to 1345. *See* Beaubek v. Waltham, Plea and Memoranda Rolls, A-5, m. 27 (1345), as recounted in *The Innkeeper's Tale; The Legal Development of a Public Calling*, 1996 Utah L. Rev. 51, 54.

7.  Charles K. Burdick, *The Origin of the Peculiar Duties of Public Service Companies*, 4 Colum. L.Rev. 514, 518 (1911).

8.  *See generally*, Jim Rossi, *The Common Law "Duty to Serve" and Protection of Consumers in an Age of Competitive Retail Public Utility Restructuring*, 51 Vand. L. Rev. 1233, 1236 (1998).

9.  People v. New York Central & Hudson River Railroad Co., 28 Hun. 543, 553 (N.Y. 1883).

10.  *Rossi, supra* note 8 at 1244-1246.

11.  In *Copeland v. The Lodge Enterprises, Inc.*, 2000 OK 36, ¶ 12, n. 25, 4 P.3d 695, the court stated:

    "The rule in Oklahoma is that a person who performs work through an independent contractor is not liable for damages to third persons caused by the negligence of the contractor *except where the work is inherently dangerous or unlawful or where the employer owes a contractual or defined legal duty to the injured party in the performance of the work.*" (emphasis added) *Williamson v. Fowler Toyota, Inc.*, 1998 OK 14, ¶ 7, 956 P.2d 858, 860, quoting from *Hudgens v. Cook Industries, Inc.*, 1973 OK 145, ¶ 11, 521 P.2d 813, 815. See also, *Huckins Hotel Co. v. Clampitt*, 1924 OK 142, 101 Okla. 190, 224 P. 945, 946-47; *Minnetonka Oil Co. v. Haviland*, 1916 OK 103, 55 Okla. 43, 155 P. 217, 219; W. Page Keeton et al, Prosser and Keeton on the Law of Torts § 71, at 511-512 (5th Ed. 1984).

12.  *See Great American Indemnity Co. v. Deatherage*, 1935 OK 1156, 175 Okla. 28, 52 P.2d 827, 830-31 ("... the general rule of non liability of the contractee is that one on whom the law imposes a positive duty to the public or an individual cannot escape the responsibility of seeing that duty performed by delegating it to an independent contractor, and will be liable for injuries resulting from the contractor's negligence in the performance thereof"); *U.S. Security Services Corp. v. Ramada Inn, Inc.*, 665 So.2d 268, 270 (Fla.App.1995); *Copeland, supra* note 11 at ¶ 12, n. 26 at 700.

ble duty rule, an innkeeper may be held vicariously liable for an independent contractor's failure to exercise reasonable care even if the innkeeper has himself exercised due care.[13] The text of § 428 extends the ancient precept of nondelegable duty by one in a public calling to public service companies which otherwise would be able to avoid liability by hiring an independent contractor.[14] **AEC, as a public utility, bears a nondelegable duty to the public.[15]** *The court need not pause to analyze today the inter-relationship of dominant with servient estate holders—a task that consumed a good portion of its pronouncement. The duty imposed on the AEC—as a public service company—indubitably extends beyond private contract or easement agreements to the public at large.[16]*

¶ 8 If I were writing for the court, I would *expressly adopt* today the text of Restatement (Second) of Torts § 428 as part of Oklahoma's common law.[17] This the court is

---

**13.** W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 71, at 511 (5th ed.1984) (". . . [T]he cases of nondelegable duty . . . hold the employer liable for the negligence of the contractor, although he has himself done everything that could reasonably be required of him. They are thus cases of vicarious liability."); *Copeland, supra* note 11 at ¶ 12, n. 27 at 700.

**14.** The liability of the *common carrier* and that of the *public utility company* have a *joint origin* in the law. For their analogous treatment, *see National Trailer Convoy, Inc. v. Saul,* 1962 OK 181, ¶ 8, 375 P.2d 922, 926, where the court states: ". . . [W]here public authority grants to an individual or corporation authority to engage in certain activities involving danger to the public, the duty to safeguard the public while performing such franchise activities, is legally nondelegable, and the franchise holder is therefore responsible for the conduct of those whom it permits to act under its franchise, even though such persons be independent contractors." The two theories evolved into *separate but conceptually akin* lines of case law. While common carriers are subject to strict liability, they and public utility companies are governed alike by a similar rule of nondelegability. *Although the nondelegability rule applies in this case, common carrier's strict liability is not implicated here.* For common carriers, see also *United States v. Fruit Growers Exp. Co.,* 279 U.S. 363, 49 S.Ct. 374, 73 L.Ed. 739 (1929); *Arthur v. Texas & P.R. Co.,* 204 U.S. 505, 27 S.Ct. 338, 51 L.Ed. 590 (1907); *Bank of Kentucky v. Adams Exp. Co.,* 93 U.S. 174, 23 L.Ed. 872 (1876); *St. Louis, I.M. & S.R. Co. v. Renfroe,* 82 Ark. 143, 100 S.W. 889 (1907); *New York, P & N R. Co. v. Cromwell,* 98 Va. 227, 35 S.E. 444 (1900).

**15.** *Snyder v. Southern California Edison Co.,* 44 Cal.2d 793, 285 P.2d 912, 917 (Cal.1955) (utility companies are responsible for nearly all pole installations; construction and maintenance of lines, including poles, is a necessary part of the utilities' business.)

**16.** *See* also, *Newsome v. Surratt,* 237 N.C. 297, 74 S.E.2d 732, 735 (N.C. 1953) (where a public authority grants an individual or corporation the right to engage in certain activities involving danger to the public, which right is denied to the general public, the duty to protect the public while performing such franchise activities is legally nondelegable and the franchise holder is therefore responsible for the conduct of those who are permitted to act under such franchises, even though such persons be independent contractors).

**17.** The court's response to my urging that § 428 governs this claim *deserves a monument to the heights of human naivete.* It implicitly denies that using heavy machinery in *parched* terrain does not present a "special risk of fire." The court's opinion recognizes that the conditions in the area were *"near drought"* and that the fire spread across 80,000 acres of *"extremely dry* rangeland and crop land . . ." (emphasis added). Appellant's brief argues that AEC began working in the area where two months earlier another fire had engulfed twenty acres and then continued to proceed after *red-flag-fire alerts and a burn ban had been issued.* The danger of fire in the setting described by the testimony is the *special* subject of *demonstrated legislative concern. See* 2 O.S. 1991 §§ 741-748. The text of § 741 provides:

> If any person shall *set or cause to be set on fire* any *woods, marsh of prairie, or any grass or stubble lands* except as hereinafter provided, such person shall be deemed guilty of a misdemeanor, and upon conviction thereof, be fined a sum not more than Five Hundred Dollars ($500.00) nor less than Ten dollars ($10.00), or imprisonment in the county ;jail for a period of not longer than six (6) months, one or both at the discretion of the court, and *shall also be liable in a civil action to any person or persons damaged by such fire to the amount of such damages.*

(emphasis added).

The text of § 746 adds illumination provided by these words:

> If any such person shall wilfully, *negligently or carelessly set or cause to be set on fire* any woods, marsh or prairie in the state, * * * shall be deemed guilty of a misdemeanor, and upon conviction thereof, shall be fined in any sum not to exceed Two Hundred Dollars ($200.00), or imprisoned in the county jail not more than one (1) year, or by both such fine and impris-

explicitly authorized to do by the provisions of 12 O.S.1991 § 2.[18] The Restatement has long been recognized as a *material source of the common law*.[19] It is only after its adoption by the highest court of a jurisdiction that the endorsed portions of the Restatement stand transformed into *formal law*.[20] Section 428 accurately reflects the present state of Oklahoma's common law, whose past jurisprudence clearly recognizes that utilities bear nondelegable duties for work that is integral to their public function[21] and presents "unreasonable risk of harm to others."[22]

---

onment in the discretion of the court, and *shall also be liable in a civil action to any person, damaged by such fire to the amount.*
(emphasis added.)

As to liability for unleashed fire, § 747 provides:
If the *ranch, buildings, improvements, fencings, timber,* marsh or other property of any person, shall be *injured or destroyed by any such fire* as described in the preceding section, *the person who shall cause or allow the same shall be responsible to the person injured thereby for all damages or injury caused or sustained by reason of such fire.* If the cattle ranch or improvements of any person, shall be injured or destroyed by any such fire *as described in the preceding section* or if the hay upon any such ranch, or the grass growing thereon, shall be injured by any such fire as aforesaid, *the person who shall cause or allow the same, shall be responsible to the person, owning or claiming the same and injured thereby, for all damage or injury caused or sustained by reason of any such fire.* .
(emphasis added).

As to damages from unleashed fire, § 748 provides:
In any action instituted in any court to recover damages under the provisions of this article, it shall not be necessary for any person, injured by any such fire to allege in his pleadings, or prove on trial of such action, title to the real property over which such fire has spread, but it shall be sufficient in any such action to allege and prove that the person, so injured was in the occupancy or possession of any such ranch, buildings, such cattle range; *it being the purpose and intention of this article to protect the possession as aforesaid of any person whether he have title to the land so claimed or occupied or not. Any railroad company operating any line in this state shall be liable for all damages sustained by fire originating from operating its road.*
(emphasis added).

18. The terms of 12 O.S.1991 § 2 provide:
The *common law*, as modified by constitutional and statutory law, judicial decisions and the condition and wants of the people, *shall remain in force in aid of the general statutes of Oklahoma;* but the rule of the common law, that statutes in derogation thereof, shall be strictly construed, shall not be applicable to any general statute of Oklahoma; but all such statutes shall be liberally construed to promote their object.
(emphasis added).

19. **Restatements** of the **common law** on chosen subjects, which are produced by the American Law Institute, a private organization of judges, practitioners, and **law** teachers, are scholarly "codifications of American **common law** in various substantive **law** areas, based upon the decisions of the courts of last resort of the states." (emphasis added). Winters, THE CONTRIBUTION OF PROFESSIONAL ORGANIZATIONS TO STABILITY AND CHANGE THROUGH LAW 265, 269 (1963). For a history of the Institute, see Goodrich, *The Story of the American Law Institute,* 1951, Wash.U.L.Q. 283; Krause, Gans, 1 THE AMERICAN LAW OR TORTS § 1:18 at 61 (1983); Prosser and Keeton, *supra* note 13, § 3 at 17; Shirley Abrahamson, *supra* note 5, at 7-24.

20. "A distinction must be recognized between what might be called the *material source* of legal precepts, that form which the content of precepts is derived, and the *formal source*, that from which it derives its validity as an authoritative guide to judicial and administrative determinations * * * We may conveniently distinguish as the two ideas by using the term "source of law" for the material source and "form of law" for the form given to the precept by the formal source. In this sense, by "sources of law" we refer to the agencies and methods by which the content of legal precepts is found or made and shaped. By "forms of law" we refer to the modes in which the legal precepts authoritatively expressed: the authoritative literary shapes they take on—what we turn to when we seek an authoritative statement of the precept." (emphasis added). Roscoe Pound, THE HISTORY AND SYSTEM OF THE COMMON LAW 84-85 (1939).

21. *Braden v. Hendricks,* 1985 OK 14, ¶ 19, 695 P.2d 1343, 1352, n. 26 ("One who owes a nondelegable duty to another cannot escape liability for its performance by engaging an independent contractor, and, in such cases, the rule that the hirer is not liable for actionable conduct of an independent contractor will not be applied.") *See Shell Pipe Line Corp. v. Curtis,* 1955 OK 212, ¶ 13, 287 P.2d 681, 685; *Allied Hotels, Limited v. Barden,* 1964 OK 16, ¶ 15; 389 P.2d 968, 971. In *Oklahoma Ry. Co. v. Boyd,* 1929 OK 82, 140 Okla. 45, 282 P. 157, 162, it is said, "Where one owes a nondelegable duty to third persons, he cannot escape the obligation of performing such duty by engaging for its performance through or by a contractor, and in such cases the rule that an employer is not liable for the negligence of an independent contractor has no application."

22. *See* Restatement (Second) of Torts § 428, *supra* note 4.

### III

### SUMMARY

¶ 9 I would declare today that the national common-law norms found in the pertinent text of the Restatement (Second) are harmonious with this State's extant jurisprudence and should be given explicit endorsement. The rural electric cooperative's status as a public utility casts upon it the nondelegable duty that is owed to the public. The utility stands liable in damages for the independent contractor's want of due care in constructing transmission poles when facing apparent fire hazard.